41615. WILSON v. THE STATE.
(330 SE2d 364)

BELL, Justice.

Jesse Wilson was convicted of the murder of 85-year-old Claude Nichols and motor vehicle theft.[1] He appeals, and we reverse.

On July 7, 1983, Nichols' car, a red Ford Fairmont, was found abandoned in Savannah, Georgia. In an attempt to locate Nichols several officers went to his apartment, where they discovered him on his bed, bound with neckties around his legs, hands, and neck. He had been dead approximately three to four weeks. Strangulation was the cause of death.

Henry Taylor, the state's key witness, testified that he was with Wilson at the time of the murder, but that he neither killed nor as-

---

[1] The crimes were committed between June 15 and June 18, 1983. Wilson was indicted on October 14, 1983, and the Chatham County jury returned its guilty verdicts on May 31, 1984. Wilson was sentenced to life imprisonment for murder and five years for motor vehicle theft, these sentences to be served concurrently. A motion for new trial was filed on June 20, 1984. The transcript of evidence was certified by the court reporter on July 5. Wilson's motion for new trial was amended on August 23, 1984, heard on August 24, and denied on August 27. The notice of appeal was filed on September 11, 1984. The record was docketed in this court on October 15, 1984. The appeal was submitted for decision without oral arguments on January 14, 1985.

sisted in killing Nichols. Taylor said that sometime between the Monday and Thursday preceding Father's Day, June 19, 1983, he and Wilson went to Nichols' house to repair his roof. According to Taylor, when he and Wilson had finished with the roof, Nichols asked them to paint his refrigerator. Taylor said that while they were doing so, Wilson suggested they rob Nichols. Taylor testified that he told Wilson he did not want to, but that at about that time Nichols walked in the room and Wilson began choking him from behind with his forearm. Taylor said that when Wilson released Nichols, Nichols collapsed to the floor, and that Wilson carried him into the bedroom, laid him on the bed, and tied him up with neckties. Taylor and Wilson removed two television sets from the house and sold them. Taylor testified that Wilson also took a pair of tan gloves and other items from Nichols' bedroom. Taylor identified a pair of tan gloves recovered from Wilson's bedroom by the police as the gloves Wilson took from Nichols. According to Taylor, Wilson removed Nichols' keys from his pockets, and they drove away in Nichols' car. Taylor also testified that he and Wilson, with Wilson driving Nichols' car, returned to Nichols' house three or four days later, and that Wilson went inside and obtained Nichols' checkbook.

Two other witnesses for the state, Mattie Graham and Ethel Rozier, are sisters of Taylor. Graham testified that she saw Wilson driving a red car in June 1983, which she had never seen him using before. She said that Wilson told her he had borrowed it. She further testified that Wilson never told her who killed Nichols. Graham, however, was impeached by her prior inconsistent statement that Wilson had told her that Taylor killed Nichols. Graham was also impeached by prior convictions of forgery and aggravated assault.

Ethel Rozier testified that on Father's Day she saw Wilson driving a red car that she did not recognize. According to her, he said he got the car from an old man. She further testified that the following day she saw Wilson with a large checkbook bearing Nichols' name on the checks. She said that Wilson asked her to call Nichols' bank to find out if he had money in his account, and to write out a check for him. She testified that she called the bank and wrote out a check, but then threw it away and refused to write another one. Rozier also testified that Wilson had several of Nichols' credit cards.

An acquaintance of Wilson, Sylvia Ellison, testified that the day before Father's Day he came to her house and told her that he knew a man who had two television sets for sale for twenty-five dollars each. She told him that she wanted to buy one of them. Wilson and Taylor returned with one of the sets later that day.

At trial Wilson testified that he had never been to Nichols' house and had no part in his killing. He admitted that the day before Father's Day he and Taylor sold a television set to Sylvia Ellison. He

added, however, that he did so only because Taylor approached him that day, asking if he knew anyone who would like to buy some television sets. He said that he did not know how or where Taylor had obtained them. Wilson also testified that he, along with other people, had driven and ridden in Nichols' car, which Taylor had somehow acquired, and that he had seen Taylor and one of his sisters with a checkbook about the same time that Taylor had approached him concerning the television sets. On cross-examination, Wilson admitted that he also sold some sheets and shirts that had belonged to Nichols, and that he had thrown away Nichols' car keys and checkbook.

1. In his seventh enumeration of error Wilson contends that the evidence presented to the jury is insufficient to support his two convictions.[2] We disagree. Viewing the evidence in a light most favorable to the jury's verdict, we find that a rational trier of fact could have found Wilson guilty of murder and motor vehicle theft beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. In his third enumeration of error Wilson contends that the trial court erred in allowing the state to introduce evidence that Henry Taylor was given a lie detector test, following which the murder charge against him was dismissed. We agree and, because we cannot conclude the error was harmless, reverse.

In a pre-trial order the trial court ruled that the state could not elicit testimony that a polygraph examination had been administered to Taylor and that, based on it, the murder charge against Taylor had been dismissed. The court also ruled, however, that if the defense elicited testimony that the murder charge against Taylor had been dismissed, the state could then introduce evidence that Taylor took a polygraph examination, but not the results thereof, for the purpose of explaining its conduct in dismissing the murder charge.

During the cross-examination of Ethel Rozier, defense counsel attempted to impeach her credibility by questioning Ms. Rozier about her relationship with Henry Taylor and her involvement with the use of Nichols' checkbook. In particular, the following colloquy occurred: "Q. [Y]ou got your story right and that's when you went to the police because you want to help your sister and your brother. A. I don't have to help my sister or brother because my brother was not charged with any murder and he was . . . the charges was dropped against him, so I have no reason to help him, and if he was wrong, I wouldn't help

---

[2] Although this case is being reversed on the grounds discussed in Division 2, infra, we must, nevertheless, address Wilson's enumeration that the evidence, including evidence improperly admitted, see Division 3, infra, was insufficient to support his convictions. See *Lewis v. State*, 248 Ga. 566 (1) (285 SE2d 179) (1981); *Hall v. State*, 244 Ga. 86 (5) (259 SE2d 41) (1979).

him anyway."

Based on the foregoing, the state contended that the defense had violated the pre-trial order by eliciting testimony that the state had dismissed the murder charge against Taylor, and that, to explain its conduct, it should therefore be allowed to present evidence that the charge was dismissed after Taylor took a polygraph examination. The trial court agreed, and the state presented evidence to that effect, without mentioning the results of the examination.

We find that that evidence was improperly admitted. "In general, it is impermissible for the state to bolster the credibility of a state's witness or impugn the credibility of the defendant by eliciting testimony to the effect that the witness or the defendant were administered polygraph examinations. See *Stack v. State*, 234 Ga. 19, 23-25 (214 SE2d 514) (1975); *Williams v. State*, 251 Ga. 749 (15) (312 SE2d 40) (1983)." *Cromer v. State*, 253 Ga. 352 (3) (320 SE2d 751) (1984). But see *State v. Chambers*, 240 Ga. 76 (239 SE2d 324) (1977) (upon an express stipulation of the parties, the results of a lie detector test are admissible for whatever purpose the jury chooses). However, pursuant to OCGA § 24-3-2 the jury may be apprised that a polygraph examination has been administered if necessary to explain an "actor's" conduct and motives, but only " 'when . . . the conduct and motives of the actor are matters concerning which the truth must be found (i.e., are relevant to the issues on trial), . . .' " *Cromer v. State*, supra, 253 Ga. at 356 (quoting *Momon v. State*, 249 Ga. 865, 867 (294 SE2d 482) (1982)). In this regard, "[i]t will be seen that only in rare instances will the 'conduct' of an investigating officer [or, as here, the state] need to be 'explained,' as in practically every case, the motive, intent, or state of mind of such an officer will not be 'matters concerning which the truth must be found.' At heart, a criminal prosecution is designed to find the truth of what a defendant did, and, on occasion, of why he did it. It is most unusual that a prosecution will properly concern itself with *why* an investigating officer did something." *Teague v. State*, 252 Ga. 534, 536 (1) (314 SE2d 910) (1984). (Emphasis in original.)

Here, the question is whether the defense, in questioning Ms. Rozier, placed in issue the state's conduct in dismissing the murder charge against Taylor. If it did, then the evidence that the murder charge against Taylor was dismissed after he took a polygraph examination was admissible. We find that the defense did not place the state's conduct in issue.

In cross-examining Rozier, Wilson's attorney was pursuing the crucial defense of whether Rozier had conspired with her brother and sister to concoct a story framing Wilson. Rozier's answer, responsive to the question addressed to her, was that she did not need to concoct a story to help her brother, because the murder charge against him

was dropped. That answer was clearly silent as to the state's conduct in the dismissal of the murder charge, and in no way implied any wrongdoing by the state in failing to pursue the murder charge against Taylor. Thus, the evidence that the state dropped the murder charge against Taylor after he took a lie detector test was inadmissible.

The question then becomes whether its admission constitutes harmful error under the standards of *Johnson v. State*, 238 Ga. 59 (230 SE2d 869) (1976). Here, the credibility of Taylor and his two sisters was critical. Wilson's guilt or innocence primarily depended on whether the jury believed Wilson's story or that of Taylor and his sisters. Although the jury was not told the results of the lie detector test, they might well have inferred that, since the murder charge was dismissed against Taylor while Wilson was being prosecuted, Taylor had passed the polygraph examination. Such an inference directly bolsters the credibility of Taylor and, indirectly, the credibility of his sisters. See *Stack v. State*, 234 Ga. 19, 23-25 (214 SE2d 514) (1975); *Williams v. State*, 251 Ga. 749 (15) (312 SE2d 40) (1983); *Cromer v. State*, supra, 253 Ga. at 356. Under these circumstances, we cannot conclude that the admission of the polygraph evidence was harmless, and Wilson's convictions must therefore be reversed.

3. For purposes of retrial we must address another of Wilson's contentions, contained in his first enumeration of error. In that enumeration Wilson argues that the trial court improperly denied his motion to suppress the pair of gloves that the state recovered from his grandmother's house. We agree.

Following the hearing on the motion to suppress, the trial court denied the motion on the ground that Wilson did not have a legitimate expectation of privacy in the room in which the gloves were found and thus had no standing to challenge the search. We find that the trial court should not have denied the motion on the ground stated. At the time of the search Wilson was living in his grandmother's home, with her permission. He occupied his own room there, and presumably had the right to exclude people other than his grandmother from the premises. Wilson, therefore, did have a reasonable expectation of privacy in the area searched. See *Sims v. State*, 251 Ga. 877 (6) (311 SE2d 161) (1984); *Nealey v. State*, 233 Ga. 326, 327 (211 SE2d 286) (1974); *Rakas v. Illinois*, 439 U. S. 128, 138-139 (99 SC 421, 58 LE2d 387) (1978); *United States v. Haydel*, 649 F2d 1152, 1154-1155 (5th Cir. 1981), modified 664 F2d 84, cert. denied, 455 U. S. 1022 (102 SC 1721, 72 LE2d 140) (1982).

The state urges that, even if Wilson did have a reasonable expectation of privacy, we should conclude that the motion to suppress was properly denied, on the ground that Wilson's grandmother gave a valid consent to search. We decline to do so, for the reason that the

trial court, which denied the motion on the more narrow ground of lack of expectation of privacy, did not reach the issues of whether Wilson's grandmother had the authority to give the consent to search and, most importantly, of whether the consent was freely and voluntarily given. See *Mooney v. State*, 243 Ga. 373, 377 (1) (254 SE2d 337) (1979); *Schneckloth v. Bustamonte*, 412 U. S. 218, 222 (93 SC 2041, 36 LE2d 854) (1973); *Bumper v. North Carolina*, 391 U. S. 543, 548 (88 SC 1788, 20 LE2d 797) (1968); *United States v. Block*, 590 F2d 535, 539 (2, 3) (4th Cir. 1978). We note that if a retrial occurs and the motion to suppress is renewed, the trial court may consider the issues involving consent at that time.

Because we have decided that Wilson's conviction must be reversed on the basis of the state's use of polygraph evidence, we need not decide whether the denial of Wilson's motion to suppress on the ground of lack of expectation of privacy was harmful error.

4. We find that Wilson's remaining enumerations of error need not be addressed.

*Judgment reversed. All the Justices concur, except Marshall, P. J., and Weltner, J., who dissent as to Division 2 and the judgment.*

DECIDED JUNE 10, 1985 —
REHEARING DENIED JUNE 27, 1985.

*G. Terry Jackson & Assoc., Michael G. Schiavone,* for appellant.
*Spencer Lawton, Jr., District Attorney, David T. Lock, Assistant District Attorney, Michael J. Bowers, Attorney General, Eddie Snelling, Jr., Senior Attorney,* for appellee.