## S93A1282. McNEAL v. THE STATE.
### (435 SE2d 47)

BENHAM, Justice.

Appellant was convicted of the felony murder of the two-year-old son of his girl friend. The felony underlying the conviction was cruelty to children. OCGA § 16-5-70.[1]

1. The State presented evidence that shortly after the child was left in the care of appellant, appellant arrived at the home of the maternal grandmother seeking help to revive the unconscious child. Efforts to revive the child were unsuccessful and he died the following day, shortly after being removed from life support systems. In a statement to the investigating officer six days after the incident, appellant admitted shaking the child "real hard, back and forth, till he went limp." The forensic pathologist who performed an autopsy on the victim testified that the child's skull was not fractured but the brain was severely swollen and the classic signs of severe shaking were present: internal bruising on the interior portion of the scalp at the back of the head and hemorrhages along the length of the spinal cord and in the retinae of the eyes. The evidence was sufficient to authorize the jury to conclude that appellant was guilty beyond a reasonable doubt of felony murder in the death of the child. *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. The trial court instructed the jury on the law of malice murder and felony murder, the offenses for which appellant was indicted, and the included offense of involuntary manslaughter.[2] Citing *Edge v. State,* 261 Ga. 865 (414 SE2d 463) (1992), appellant contends the trial court gave an improper sequential charge.[3]

Even if we were to assume that the charge complained of was a sequential charge,[4] our decision in *Edge* does not make invalid the

---

[1] The crimes occurred on July 5, 1991, and the victim died the next day. Appellant was arrested on July 11, and indicted on January 24, 1992. The trial took place on June 22, 1992, and the jury returned its guilty verdict on June 26. Appellant was sentenced to life imprisonment on June 26, and his motion for new trial, filed on July 6, was denied on January 27, 1993. Appellant's notice of appeal was filed February 22, the case was docketed in this court on May 19, and submitted for decision on July 2, 1993.

[2] Appellant testified that he found the child unconscious in the bathtub and shook him in an effort to revive him.

[3] Appellant takes issue with the following instruction, given by the trial court after making the jury aware of the three types of homicide involved:

If you do not believe beyond a reasonable doubt that the defendant is guilty of malice murder or felony murder, but you do believe beyond a reasonable doubt that the defendant is guilty of involuntary manslaughter, then you would be authorized to find the defendant guilty of involuntary manslaughter and, in that event, the form of the verdict would be. . . .

[4] The essence of a sequential charge is judicial direction to consider possible verdicts in a particular sequence. *Head v. State,* 262 Ga. 795 (5) (426 SE2d 547) (1993). See also *Edge v. State,* supra. After reviewing the trial court's instructions, we cannot say that

a reasonable juror would have concluded that the court was instructing the jury that

giving of such a charge in this case since this case involves involuntary rather than voluntary manslaughter. The sequential charge in *Edge* eliminated the jury's full consideration of voluntary manslaughter and its concomitant mitigating factor of provoked passion. See OCGA § 16-5-2 (a). Involuntary manslaughter does not contain an element that mitigates a greater offense. See OCGA § 16-5-3 (a). The absence of a mitigating factor makes our holding in *Edge* inapplicable.

3. Appellant maintains error was committed when the trial court refused to grant appellant sufficient funds to hire the forensic pathologist of his choice to review the victim's medical records. When it was informed that it would cost $2,500 to retain the pathologist appellant desired, the trial court authorized appellant to spend $1,200, with which he hired another pathologist. The Fourteenth Amendment's due process guarantee of fundamental fairness requires that an indigent defendant be given "meaningful access to justice," e.g., access to a competent expert necessary to an effective defense, but an indigent defendant does not have a constitutional right to the expert he prefers. *Ake v. Oklahoma*, 470 U. S. 68, 77 (105 SC 1087, 84 LE2d 53) (1985). Determination of the method of implementation of this right has been left to the states. Id. In Georgia, the grant or denial of a motion for the assistance of an expert witness lies within the sound discretion of the trial court (*Dampier v. State*, 245 Ga. 427 (4) (265 SE2d 565) (1980)), and a defendant's preference and the cost to the public of that preference are factors to be considered in the exercise of that discretion. *Thornton v. State*, 255 Ga. 434, fn. 2 (339 SE2d 240) (1986).

In the case at bar, appellant does not argue that the allocated funds were not sufficient to employ an expert, or that the assistance of the expert employed was deficient due to insufficient funds. Instead, he argues that the trial court expressed bias against the expert of choice. We have reviewed the trial transcript and conclude that the trial court did not abuse its discretion when it refused to authorize funds sufficient for appellant to hire the expert he desired.

4. Appellant asserts error in the trial court's purported failure to conduct an in camera inspection of the State's file despite the request of counsel for appellant. See *Tribble v. State*, 248 Ga. 274 (280 SE2d 352) (1981). In *Tribble* at 275, this court held that a trial court is required to conduct an in camera inspection of the State's file upon the request of a defendant dissatisfied with the State's response to the defendant's request for exculpatory material "as a means of ac-

---

it could consider [in]voluntary manslaughter *only if* it found [appellant] not guilty of malice murder and felony murder.
[Emphasis supplied.] *Head v. State*, supra at 799.

commodating the interest of the state in the effective prosecution of criminal cases and the interest of the accused in the preparation of his defense." However, the trial court's failure or refusal to conduct the review is not reversible error, as the error may be cured by post-trial examination of the State's file. Id., supra at 276. See also *Carpenter v. State*, 252 Ga. 79 (2) (310 SE2d 912) (1984); *Hill v. State*, 250 Ga. 164 (2) (295 SE2d 838) (1982).

In the case at bar, appellant requested, and the trial court agreed to conduct, an in camera review of the State's file. However, there is nothing in the record that reflects the trial court completed the task. In the absence of evidence that the trial court reviewed the State's file, we remand the case to the trial court for a post-trial examination of the file or, if a review has occurred, entry on the record of the result of that inspection. *See Carpenter*, supra; *Hill*, supra; and *Tribble*, supra, Div. 3.[5] Appellant may file a notice of appeal from the trial court's ruling on remand.

*Judgment affirmed in part and remanded with direction in part. All the Justices concur.*

DECIDED OCTOBER 4, 1993.

*Cowart & McCullough, Hugh J. McCullough*, for appellant.

*Dupont K. Cheney, District Attorney, Michael J. Bowers, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General, Matthew P. Stone, Staff Attorney*, for appellee.

---

[5] The State cites *Williams v. State*, 251 Ga. 749, 789 (312 SE2d 40) (1983), for the proposition that appellant must prove he was denied exculpatory material. In *Williams*, the defendant took issue with the results of the in camera review conducted by the trial court, and this court determined that Williams had the appellate burden of showing both the materiality and the favorable nature of the evidence sought. In the case at bar, there is no evidence that the required in camera review was conducted.