## S93A1620. STEWART v. THE STATE.
### (440 SE2d 452)

BENHAM, Justice.

Appellant was convicted of malice murder in connection with the 1989 stabbing/strangulation death of his girl friend.[1] The State

---

[1] The crime occurred in the early morning hours of September 29, 1989, and appellant

presented evidence that appellant and the victim had had a violent relationship; that appellant had threatened to kill the victim four days before she was murdered; that he was searching for her in the early morning hours of the day she was killed; that he was the person with whom the victim was last seen alive; and that he had scratch marks on his neck when he was picked up for questioning at the home of the victim's mother the day following the murder. The evidence was sufficient for a rational trier of fact to determine that appellant was guilty beyond a reasonable doubt of malice murder. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

1. Prior to trial, the State filed notices of its intent to present evidence of allegedly similar transactions, i.e., appellant's indictment for murder and guilty plea to voluntary manslaughter, and appellant's guilty plea to charges of disorderly conduct and fighting that arose from an incident involving the victim of the murder. See Uniform Superior Court Rule 31.3 (B). The trial court conducted a hearing and reserved ruling. Id. After the jury was sworn, the trial court announced that the State could not use the voluntary manslaughter conviction but could use the disorderly and fighting convictions, since they were evidence of prior difficulties between appellant and the victim. The State then informed the court that it intended to present evidence that appellant threatened to kill the victim four days prior to the victim's death. In response to appellant's objection that USCR Rule 31.3 (B) required that a pre-trial hearing be held, the trial court ruled that evidence of prior difficulties between the victim and appellant was admissible without the necessity of a pre-trial evidentiary hearing. During trial, the State presented witnesses who each testified that appellant had threatened to kill the victim. Appellant takes issue with the trial court's decision that USCR 31.3 (B) was not applicable to the evidence concerning the purported threat.

USCR 31 applies to acts or occurrences which are categorized as prior difficulties between the victim and the defendant. *Loggins v. State*, 260 Ga. 1 (2) (388 SE2d 675) (1990). Before evidence of prior difficulties or quarrels, even those occurring recently, may be presented at trial, the trial court must conduct a hearing pursuant to USCR 31.3 (B), and determine, as to each prior difficulty, that (1) there is sufficient evidence that the prior difficulty occurred; (2) that the evidence is offered for an appropriate purpose; and (3) that there is a sufficient probative connection between the crime charged and

---

was arrested later that day. He was indicted on January 9, 1990, and the trial took place on October 16-17, 1990, immediately after which appellant was sentenced to life imprisonment. His motion for new trial was filed on November 15, 1990, amended on April 2 and September 6, 1991, and denied on June 25, 1993. The case was orally argued before this court on October 4, 1993.

the prior difficulty to justify admission of the prior difficulty into evidence. *Maxwell v. State*, 262 Ga. 73 (2) (b) (414 SE2d 470) (1992). Compliance with USCR 31.1 and 31.3 for all prior acts involving the accused and the victim is mandatory, but non-compliance will be excused as harmless error if the evidence against the accused is overwhelming. *Barrett v. State*, 263 Ga. 533, 535 (436 SE2d 480) (1993). In light of the circumstantial nature of the evidence adduced against appellant, as well as the testimony of the investigating officer that he continued to suspect as the killer the witness who was the last person to admit being with the victim, it cannot be said that the evidence against appellant was overwhelming.

The State suggests that USCR 31.3 (E) exempts the evidence of the threat from USCR 31.3 (B) if the threat is viewed as part of a single, continuous transaction immediately related in time and place to the charge being tried. See *Grace v. State*, 262 Ga. 746 (425 SE2d 865) (1993). In *Maxwell*, however, we observed that the hearing requirements of USCR 31.3 (B) applied to recent difficulties occurring between the accused and the victim up until the victim's death. See also *Giles v. State*, 211 Ga. App. 594 (440 SE2d 48) (1993) (where USCR 31.1 and 31.3 (B) were followed regarding prior difficulties that occurred earlier the night of the crime). In light of the above, we cannot say that a threat allegedly made four days before the killing, was immediately related in time and place to the killing so as to be considered part of a single continuous transaction with the killing.

While the failure to have a *Maxwell* hearing was error, we are unable to conclude at this time that the error requires a new trial. Instead, we remand the case to the trial court to conduct a post-trial *Maxwell* hearing. See *McNeal v. State*, 263 Ga. 397 (4) (435 SE2d 47) (1993) (case remanded for post-trial *Tribble* in camera review); *Lewis v. State*, 262 Ga. 679 (2) (424 SE2d 626) (1993) (case remanded for post-trial *Batson* hearing); *Crawford v. State*, 240 Ga. 321 (1) (240 SE2d 824) (1977) (case remanded for post-trial hearing on admissibility of confession); *Thornton v. State*, 238 Ga. 160 (2) (231 SE2d 729) (1977) (case remanded for post-trial hearing on merits of *Brady* motion regarding informant's identity). Should the trial court determine that the State's evidence concerning appellant's alleged threat against the victim does not comport with the standards enunciated in *Maxwell*, a new trial would be warranted. If, on the other hand, the trial court concludes that the evidence is admissible under *Maxwell*, a new trial is unnecessary.

2. Appellant asserts as error the trial court's grant of the State's motion in limine prohibiting appellant from making any reference to the results of a polygraph examination of a witness for the State. While a jury may be apprised that a polygraph examination has been administered to a witness to explain the conduct of the witness (*New-*

*berry v. State*, 260 Ga. 416 (3) (395 SE2d 813) (1990)) as long as no inference regarding the results of the test is raised (*Carr v. State*, 259 Ga. 318 (1) (380 SE2d 700) (1989); *Wilson v. State*, 254 Ga. 473, 477 (330 SE2d 364) (1985)), the *results* of a polygraph examination are admissible only upon an express stipulation of the parties. *State v. Chambers*, 240 Ga. 76 (239 SE2d 324) (1977). In the absence of the required stipulation, the trial court did not err when it proscribed appellant from referring to the results of a polygraph exam.

3. Appellant takes issue with the admission of the testimony of a witness who had previously undergone hypnosis in connection with his recollection of events involving this case. We note that "in Georgia, the testimony of a previously hypnotized witness will not be considered corrupt and inadmissible . . . ." *Walraven v. State*, 255 Ga. 276, 282 (336 SE2d 798) (1985). Due to his failure to object at trial to the admission of the challenged testimony, appellant waived further appellate review of the issue.

4. The trial court's failure to charge the jury on implied malice was not harmful to appellant since the jury was instructed that it must find actual malice before it could find appellant guilty of malice murder.

5. Appellant testified that he did not see the victim the day she was killed, and that he did not stab the victim. Since there was no evidence to support an instruction on the law of voluntary manslaughter, the trial court's failure to instruct the jury on the subject was not error. *Wright v. State*, 253 Ga. 1 (4) (316 SE2d 445) (1984).

6. Appellant next contends that he received ineffective assistance of counsel at trial. Having asserted such an allegation, appellant had the burden to establish that his attorney's representation fell below an objective standard of reasonableness and that there was a reasonable probability that, but for the unprofessional errors, the result of the proceeding would have been different. *Smith v. State*, 262 Ga. 480, 481 (422 SE2d 173) (1992). In so doing, appellant must overcome the strong presumption that trial counsel's performance " 'falls within the wide range of reasonable professional assistance. . . .' " *Johnson v. State*, 262 Ga. 545 (1) (422 SE2d 659) (1992).

Appellant alleges that trial counsel was inadequately prepared, did not reasonably investigate the case, did not communicate with appellant, and conducted an inadequate voir dire. Trial counsel testified at the hearing and described himself as a veteran murder defense attorney who had rendered effective assistance of counsel to appellant. He reported that he had met with appellant and his family several times, that the State had turned its entire file over to him, and that a police investigator had freely discussed the case with him. While members of the venire were not qualified as to their relationship to James Dawson, a State's witness who was also a suspect in the case,

no harm resulted since Dawson's half-sister who served as an alternate juror did not discuss the case with the jury. Trial counsel explained that he had not called as witnesses several people whose names were given him by appellant's family because the potential witnesses suffered credibility problems or had nothing significant to say. Other shortcomings of counsel enumerated by appellant did not constitute error (see, e.g., Divisions 2, 3, and 5, supra), or constituted trial strategy or tactics. The fact that appellant and his present counsel now disagree with the difficult decisions regarding trial tactics and strategy made by trial counsel does not require a finding that appellant received representation amounting to ineffective assistance of counsel. *Van Alstine v. State*, 263 Ga. 1, 4-5 (426 SE2d 360) (1993). We affirm the trial court's conclusion that appellant did not establish ineffective assistance of counsel.

*Judgment affirmed and case remanded with direction. All the Justices concur, except Hunt, P. J., Hunstein and Carley, JJ., who dissent.*

HUNT, Presiding Justice, dissenting.

With the majority opinion in this case we have come, through a series of cases, to a position which is inconsistent with basic principles of evidence. Accordingly, I must respectfully dissent.

Uniform Superior Court Rules 31.1 and 31.3 govern situations in which the State seeks to introduce during trial evidence of similar transactions or occurrences. By "similar transactions," the courts have meant independent crimes or occurrences which are unrelated or without connection to the crime with which the defendant is charged. Evidence of such similar transactions has been generally excluded because our system of jurisprudence requires a jury to determine the guilt or innocence of a defendant solely on the basis of evidence relevant to the crime with which he is charged rather on a belief that the defendant is a person of general bad character or a belief that because the defendant committed some other crime he must also have committed the crime with which he is charged. *United States v. Fosher*, 568 F2d 207, 212 (1st Cir. 1978). In other words, the state may not attempt to "show that, because of an *unconnected* act in the accused's past, the accused should be convicted of the present charge." (Emphasis supplied.) *Barrett v. State*, 263 Ga. 533, 535 (436 SE2d 480) (1993).

Of course, evidence of similar transactions has been deemed admissible when the purpose of its introduction was not an attempt to establish the defendant's guilt on the basis of general bad character or a propensity to commit crime. For instance, evidence of similar transactions has been held admissible when the purpose of introducing the evidence was to establish identity or motive, or to show lack of

accident or the existence of a conspiracy.[2] On the other hand, and quite naturally, where no similar transaction is involved, there has been no need to examine the evidence under the rules dealing with independent crimes. Thus, evidence of prior difficulties between a defendant and a victim has been admitted, not under the rule governing similar transactions, but as evidence of the relationship between the defendant and the victim. *Rainwater v. State*, 256 Ga. 271 (347 SE2d 586) (1986). The reason for this is that prior difficulties between a defendant and the person who eventually becomes his victim, forming as they do a part of the relationship between these same people, are, of necessity and by their nature, connected or related events and cannot logically be considered independent actions or occurrences.

The error into which the majority in this case has fallen finds its beginnings in our holding in *Loggins v. State*, 260 Ga. 1 (388 SE2d 675) (1990). In *Loggins*, this Court held that USCR 31.1 "applies to acts which are categorized as similar transactions, as well as those acts or occurrences which are categorized as *prior difficulties*." (Emphasis supplied.) 260 Ga. at 2. That case involved an attempt by the state to introduce in evidence the defendant's conviction for the aggravated assault of a third party and the revocation of the defendant's probation because of a second aggravated assault on a third party. The application of USCR 31.1 was proper in that case given the fact that evidence of the crimes or transactions which the state sought to introduce involved a third party, the crime against whom was unconnected to the crime against the victim, and did not involve the victim or cast light on the relationship between the defendant and the victim. The error to which *Loggins* has led, however, springs from the use of the term "prior difficulties" in referring to incidents which involved a third party. Such incidents are evidence of difficulties between the defendant and the third party, but are not "prior" as the crime was not committed against the third party. To be accurate, the term "prior difficulties" should only apply to incidents involving the defendant and the victim which are prior to the crime committed against the victim with which the defendant is charged. This accurate use of "prior difficulties" makes clear that the incidents are indeed connected.[3]

The inaccuracy which crept in imperceptibly in *Loggins* was exacerbated by our holding in *Maxwell v. State*, 262 Ga. 73 (414 SE2d 470) (1992). In that case, the holding in *Loggins*, based as it was upon

---

[2] For a fuller discussion, see McCormick on Evidence (4th ed.), p. 797, § 190.

[3] As Justice Carley points out in his special concurrence in *Barrett*, supra, after the decision in *Loggins*, we followed *Rainwater* in holding that evidence of a defendant's prior difficulties was admissible as evidence of the relationship between the defendant and the victim and did not fall under USCR 31.1 and 31.3 governing proof of independent crimes.

an inaccurate use of "prior difficulties," was broadened so as to require the state to comply with USCR 31.1 when it intended to present evidence of prior difficulties between the defendant and the victim. In supporting this position, the Court, citing *Williams v. State*, 261 Ga. 640 (409 SE2d 649) (1991), stated:

> because the general character of an accused is inadmissible unless the accused chooses to put his character in issue, we prohibit the admission of evidence of distinct, independent, and separate offenses or acts where there is no logical connection between the crime charged and those independent offenses or acts.

262 Ga. at 74-75. In *Maxwell*, the state sought to introduce evidence of incidents between the defendant and his wife, of whose murder he was found guilty. Those incidents were, despite the citation from *Williams*, neither evidence of general character nor separate offenses with no logical connection to the crime charged, but rather evidence of specific behavior directly relevant to the relationship between the defendant and his wife. Similarly, in the present case, involving as it does a defendant's threat, four days before the murder, to kill the victim, the direct and logical connection between the threat and the murder is even more apparent; we are not dealing with separate, independent, extrinsic acts but with acts which are "inextricably intertwined."[4] Unlike the cases, which USCR 31.3 is designed to exclude, where the state pursues the prohibited purpose of using evidence of similar transactions to establish a general character or propensity which will supply the missing element of motive or intent in the crime charged, the present case involves a threat which is an expression of a specific intent to commit the charged crime. The threat and the final act against the victim are part of a single fabric, the initial act leading inevitably, as it proved, to the fatal conclusion. There can be no doubt that the evidence of the threat against the victim is relevant evidence, and evidence, if relevant, is not rendered inadmissible because it places the defendant's character in issue. *Richie v. State*, 258 Ga. 361, 362 (369 SE2d 740) (1988).

What is true in this case is generally true with all cases involving

---

[4] The federal cases which have dealt with evidentiary challenges on the basis of Federal Rule of Evidence 404 (b), the federal rule dealing with similar transactions, have found the rule inapplicable where the "other act" is not extrinsic to the crime. "An act cannot be characterized as an extrinsic act when the evidence concerning that act and the evidence used to prove the crime charged are inextricably intertwined." *United States v. Aleman*, 592 F2d 881, 885 (5th Cir. 1979). In this case, Stewart could have been charged in the indictment with the violation of OCGA § 16-11-37 (terroristic threats); that such a charge could have been made seems to illustrate forcefully the connection between the threat and the murder.

prior difficulties between a victim and a defendant. The history of their relationship is of whole cloth woven of the many threads of dependent, connected actions and incidents that occurred between them. In short, evidence concerning prior difficulties they have experienced in their relationship is relevant. Further, these prior difficulties bear no resemblance to the similar transactions that USCR 31.3 was intended to cover.[5] I respectfully dissent in the hope that we will, as Justice Carley proposed in his special concurrence in *Barrett, supra*, overrule *Maxwell* and restore the better rule concerning prior difficulties between a defendant and the victim which we had followed in our earlier cases.

I am authorized to state that Justice Hunstein and Justice Carley join in this dissent.

DECIDED FEBRUARY 14, 1994 —
RECONSIDERATION DENIED FEBRUARY 25, 1994.

*Gilbert J. Murrah, Ronnie Joe Lane,* for appellant.

*J. Brown Moseley, District Attorney, Michael J. Bowers, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General, Rachelle L. Strausner, Staff Attorney,* for appellee.

---

[5] See Abraham P. Ordover, *Balancing the Presumptions of Guilt and Innocence: Rules 404(b), 608(b) and 609(a)*, 38 Emory L.J. 135, 156-157. In summarizing the problems presented when the state attempts to present evidence of similar transactions, Ordover reminds the reader that

> [i]t must be emphasized that we are not concerned with evidence of other crimes that are somehow connected to the crimes in the indictment. Instead, we are dealing with a completely unconnected, but arguably similar, occurrence as probative of the intent to commit the specific crime now at issue.

Similarly, USCR 31.3 should not be interpreted to apply to "prior difficulties," a term which, as we have used it in this dissent, is properly applied only to difficulties between a defendant and a victim, because such prior difficulties are *not* completely unconnected, though arguably similar, occurrences.