## S95A1509. FARGASON v. THE STATE.
(467 SE2d 551)

FLETCHER, Presiding Justice.

Teresa Gail Fargason was convicted of the malice murder of her six-year-old daughter, Taylor, who was smothered to death.[1] Fargason contends that she is entitled to a new trial because her former husband testified that she failed three polygraph examinations, the prosecutor referred to that testimony in closing argument, and trial counsel did not object to the testimony or argument. Because the witness mentioned the polygraph examinations in response to the questioning of the defendant's attorney and no objection was made, we find no reversible error and affirm.

1. Fargason testified at trial that she first noticed her daughter was missing as she walked up to the deli counter at a grocery store,

---

[7] See *Jones v. Kemp*, 706 FSupp. 1534, 1559 (N.D. Ga. 1989).
[8] Id.
[9] *Berger v. United States*, 295 U. S. 78, 88 (55 SC 629, 79 LE 1314) (1935).
[1] The crime occurred on June 9, 1991, and Fargason was indicted on January 23, 1993. A jury found her guilty and the trial court sentenced her to life imprisonment on September 17, 1993. Fargason filed a motion for new trial on September 17, 1993, a hearing was held on September 27 and 28, 1994, and the trial court denied the motion on May 10, 1995. Fargason filed a notice of appeal on May 30, 1995. The case was docketed in this Court on June 23, 1995, and orally argued on September 18, 1995.

turned around, and saw that Taylor was not behind her. Other evidence at trial showed that no employee or customer saw Taylor in the store on that visit or a struggle and abduction in the parking lot. One customer testified that she saw Fargason walking alone in the parking lot just before 10:00 p.m., and a store employee testified that Fargason entered the store alone around 10:00 p.m. A police dog was unable to pick up Taylor's scent inside or outside the store. Taylor's body was found lying on a deserted road within one hour of Fargason reporting that her daughter was missing. The state introduced physical evidence that Taylor's blanket in Fargason's car had a blood stain that matched Taylor's blood sample, Taylor's arm had an imprint that matched the pattern on the sidewall of a rear tire on Fargason's car, and Taylor's right hand held a hair that matched Fargason's hair. After reviewing the evidence in the light most favorable to the jury's determination of guilt, we conclude that a rational trier of fact could have found Fargason guilty of murder.[2]

2. Charles Fargason, the defendant's former husband and Taylor's father, testified for the state at trial. During his cross-examination, he answered a question by saying, "She failed three lie detector tests, didn't she?" Defense counsel denied that it was true, but did not object, move for a mistrial, request curative instructions, or seek an admonition. During closing arguments, the prosecutor referred to the testimony by stating, "[t]here's undisputed evidence that she admitted to her ex-husband that she failed a series of polygraphs." Again, defense counsel did not object.

Under Georgia law, the state generally may not impugn the defendant's credibility by eliciting testimony that the defendant took a polygraph examination.[3] The results of a lie detector test are not admissible except by agreement[4] or to explain an actor's conduct or motives concerning relevant issues.[5] In this case, it was the defense attorney, and not the prosecutor, who induced the error by eliciting testimony related to the polygraph test. No other evidence was presented on the issue. The prosecutor repeated the testimony that the jury had already heard. Fargason waived her right to assert error on appeal by failing to object to the evidence during Charles Fargason's testimony.[6]

Nor does the trial counsel's failure to object constitute ineffective assistance of counsel. Fargason's trial counsel testified that he chose

---

[2] See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[3] *Wilson v. State*, 254 Ga. 473, 477 (330 SE2d 364) (1985).

[4] *State v. Chambers*, 240 Ga. 76 (239 SE2d 324) (1977).

[5] *Morris v. State*, 264 Ga. 823, 824 (452 SE2d 100) (1995).

[6] See *Jordan v. State*, 247 Ga. 328, 349 (276 SE2d 224) (1981) (noting prejudice to a defendant's case occurs when facts introduced in testimony and not when the prosecutor refers to the fact).

not to object because he did not believe the trial court would grant a mistrial and curative instructions would only highlight the damaging testimony. He felt that his statement that the witness's testimony was not true, which the state did not challenge, placed the defendant in a better situation than curative instructions would have. The attorney's decision not to object was part of a legitimate trial strategy and falls within the range of reasonable professional assistance.[7]

3. Fargason also contends that the trial court erred in ruling that the state could introduce evidence of similar transactions and that Fargason opened the door to character evidence. She specifically objects to the testimony of neighbors about incidents where she had left her daughter sleeping at home alone and picked Taylor up late from their houses and to the testimony of child care workers that Fargason did not hug or show interest in Taylor when she picked her daughter up after work.

We conclude that the trial court did not err in allowing testimony on Fargason's treatment of her daughter. The neighbors' and child care workers' testimony was not evidence of similar transactions or prior difficulties that would require a hearing under Uniform Superior Court Rule 31.3. Instead, the evidence explained the relationship between mother and daughter and was relevant to the motive for the murder. The state's theory was that Fargason killed Taylor because her boyfriend did not want to raise another family. Moreover, it was Fargason, rather than the state, who first raised the issue that she was a good and loving mother in her cross-examinations of these witnesses.

4. Besides faulting trial counsel's strategy on the polygraph issue, Fargason enumerates eight additional examples of ineffective assistance. She criticizes trial counsel's failure to prevent her interrogation by police on the day after Taylor died, call critical witnesses, object to several exhibits, seek the trial court's recusal, have all bench conferences recorded, have her present at all trial proceedings, introduce demonstrative evidence on Taylor's nickname, and request a limiting instruction on character evidence.

To prove an ineffective assistance of counsel claim, the defendant must show that trial counsel performed deficiently and that the result of the trial would have been different but for the deficiency.[8] Considering the allegations of ineffectiveness together, they do not show a deficient performance, much less prejudice. Rather, they reflect tactical decisions that trial counsel and Fargason made during the investigation and trial. The record shows that Fargason retained trial coun-

---

[7] See *Black v. State*, 264 Ga. 550, 551 (448 SE2d 357) (1994), cert. denied, ___ U. S. ___ (115 SC 1368, 131 LE2d 223) (1995).

[8] *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

sel, an experienced criminal defense attorney, on the day after Taylor died. Although her attorney advised against taking the polygraph examination, she disregarded his advice and took it. Her trial attorney conferred with her for more than 100 hours, contacted every witness on the state's list except police officers, took statements from approximately 150 persons, filed numerous pre-trial motions, retained experts for possible testimony at trial, presented several witnesses in her defense, and conducted aggressive cross-examinations of the state's witnesses. The trial court properly concluded that Fargason failed to show that her counsel's performance fell below a minimal standard and prejudiced her.

5. In other enumerations of error, Fargason contends that the trial court should have granted her motion to suppress wiretap evidence and her statements to police, removed the trial to another county, recused itself, and given limiting instructions. She also criticizes her exclusion from one in-chambers proceeding and rulings that allegedly prevented her from presenting evidence on her theory of a stranger killing. A review of these issues shows no error.

6. We have not considered any enumeration of error that was filed late.[9] Permission to file a supplemental brief does not give the appealing party the right to raise new enumerations of error after oral arguments.

*Judgment affirmed. All the Justices concur.*

DECIDED MARCH 11, 1996.

*Drew Findling, Elizabeth Rankin,* for appellant.
*Charles H. Weston, District Attorney, Robin O. Flanders, Laura D. Hogue, Thomas J. Matthews, Assistant District Attorneys, Michael J. Bowers, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General, Marla-Deen Brooks, Assistant Attorney General,* for appellee.

