S11A1503. MOORE v. THE STATE.

(725 SE2d 290)

NAHMIAS, Justice.

Calvin Moore appeals his conviction for malice murder in connection with the death of 63-year-old Lucius Harris, Jr. Although we conclude that the evidence was sufficient to support Appellant's conviction, the trial court erred in allowing the State to introduce similar transaction evidence without conducting the hearing required by Uniform Superior Court Rule 31.3 (B) and making the necessary findings on the record. See *Williams v. State*, 261 Ga. 640, 642 & n. 3 (409 SE2d 649) (1991). Accordingly, we vacate the trial court's judgment and remand the case for a Rule 31.3 hearing and the entry of proper findings or, if need be, a new trial.[1]

1. The evidence at trial, viewed in the light most favorable to the verdict, showed the following. Appellant moved in with the victim in June or July of 2003. On occasion, Appellant was seen slapping or hitting the victim. On the evening of June 10, 2004, the victim's cousin, Angela Horton, visited him at his house. Horton observed that the victim had a busted lip, his knees were skinned, he had blood on his boxer shorts, and he could barely talk. Appellant was home at the time and told Horton that he was tired of the victim stealing his money and smoking his dope and he was going to beat the victim to death and leave his body on the railroad track so that it could not be identified after a train ran over it. Not thinking that Appellant was serious, Horton left and went to work.

That night, Robert Cook, who was then homeless, was camping on an abandoned street by a railroad track. Sometime after 3:00

---

[1] The crimes occurred in the late evening and early morning hours of June 10-11, 2004. On July 15, 2004, Appellant was indicted in Tift County for malice murder, felony murder, and aggravated assault. On March 7, 2006, a jury found him guilty of all charges. The felony murder conviction was vacated by operation of law, the aggravated assault conviction merged, and the trial court sentenced Appellant to life in prison for malice murder. On March 13, 2006, Appellant filed a motion for new trial, which was amended and supplemented on several occasions over the next four years. After several hearings, the trial court denied the motion on October 6, 2010. Appellant filed a timely notice of appeal, and the case was docketed for the September 2011 term and submitted for decision on the briefs. Appellant has chosen to represent himself for parts of the motion for new trial proceeding and on appeal.

a.m., Cook saw a large man carrying a body on his shoulders emerge from the bushes. The man put the body down on the ground by a fence before walking over to Cook and asking him what he was doing there. The man then snatched Cook's backpack out of his hand, pulled Cook to the ground, and held Cook down with his hands around Cook's neck. The man let Cook go after Cook said that he "wouldn't say nothing" about what he had seen; when the man looked the other way, Cook ran to a nearby convenience store, where he called 911 at 3:54 a.m.

Cook led the responding officers back to his encampment and gave the officers a physical description of the man who had attacked him. The officers searched the area and found the victim's body lying on the railroad track. Identification found with the victim led the officers to his house, where they found Appellant standing in the yard. Appellant matched the physical description Cook had provided, but Appellant denied having ever been to the area where the victim's body was found. One neighbor had seen Appellant on a street corner at about 3:00 a.m., and another saw his car driving up the street at about 3:15 a.m. The police later found Appellant's latent thumb print on a metal fence rail near Cook's campsite and about 150 yards from where the victim's body was found. The medical examiner determined that the victim died from crushing chest injuries associated with manual strangulation.

Over Appellant's objection, the State presented evidence at trial regarding Appellant's involvement in the 1995 death of Robert Littrell, a man made frail by multiple sclerosis. Appellant had lived with Littrell as his caretaker for about five years, and they had financial and physical disputes. On November 2, 1995, Appellant called 911 to report that Littrell was not breathing. The chief medical examiner testified that Littrell had suffered crushing chest injuries and a throat injury consistent with manual strangulation, and a regional medical examiner testified that Littrell's injuries were similar to the injuries suffered by the victim in this case. Appellant claimed that he inflicted Littrell's injuries in an unsuccessful attempt to resuscitate him through CPR. Although Appellant was not charged at the time, he was apparently indicted for the murder of Littrell after the charges were filed in this case.

When viewed in the light most favorable to the verdict, the evidence presented at trial and summarized above was sufficient to authorize a rational jury to find Appellant guilty beyond a reasonable doubt of malice murder. See *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SC 2781, 61 LE2d 560) (1979). See also *Vega v. State*, 285 Ga. 32, 33 (673 SE2d 223) (2009) (" 'It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.' " (citation omitted)).

2. Appellant contends that the trial court erred in admitting evidence about his involvement in Littrell's death as a similar transaction at his murder trial without holding a proper hearing on admissibility and making the required on-the-record findings. We agree.

Uniform Superior Court Rule 31.3 (B) prohibits the State from introducing evidence of similar transactions or occurrences unless "specifically approved by the judge."[2] Where the State seeks to introduce similar transaction evidence, it must provide the defense with written notice and specified information and documents, and "[t]he judge shall hold a hearing at such time as may be appropriate, and may receive evidence on any issue of fact necessary to determine the request, out of the presence of the jury." USCR 31.3 (B). A Rule 31.3 (B) hearing must be held even if not requested by the defendant. See *Stewart v. State*, 263 Ga. 843, 845 (440 SE2d 452) (1994) (describing compliance with Rule 31.3 as "mandatory"), overruled on other grounds by *Wall v. State*, 269 Ga. 506, 509 (500 SE2d 904) (1998); *Cavender v. State*, 208 Ga. App. 61, 63 (429 SE2d 711) (1993) ("'[T]he burden of conducting the requisite hearing before similar transaction evidence can be admitted at trial is placed squarely with the State and the trial court; defendant bears no burden to initiate this procedure.'" (citation omitted)).

The State bears the burden to show that: (1) it seeks to introduce the evidence "not to raise an improper inference as to the accused's character, but for some appropriate purpose which has been deemed to be an exception to the general rule of inadmissibility"; (2) "there is sufficient evidence to establish that the accused committed the independent offense or act"; and (3) "there is a sufficient connection or similarity between the independent offense or act and the crime charged so that proof of the former tends to prove the latter." *Williams*, 261 Ga. at 642. Before admitting similar transaction evidence, the trial court must make findings on the record as to these three issues. See id. at 642, n. 3.

On February 7, 2006, Appellant filed a motion in limine to prevent the State from admitting evidence regarding Littrell's death as a similar transaction or making any reference to it. The motion included a request for a hearing; in particular, Appellant wanted the

---

[2] See Rule 31.3 (C) ("Evidence of similar transactions or occurrences not approved shall be inadmissible. In every case, the prosecuting attorney and defense attorney shall instruct their witnesses not to refer to similar crimes, transactions or occurrences, or otherwise place the defendant's character in issue, unless specifically authorized by the judge."). See also OCGA § 24-2-2 ("The general character of the parties and especially their conduct in other transactions are irrelevant matter unless the nature of the action involves such character and renders necessary or proper the investigation of such conduct.").

State to produce the medical examiner who originally performed Littrell's autopsy and all pictures from the autopsies of Littrell and the victim and to show from the medical evidence how the two deaths were similar beyond being caused by blunt force trauma. Nine days before trial, on February 20, 2006, the trial court had a discussion about the motion in limine in chambers with counsel for Appellant and the State. Appellant was not present, and the discussion was not recorded. On February 22, the State sent the court a letter brief stating that the similar transaction evidence would be offered to show identity and bent of mind. On February 23, the trial court entered a written order authorizing the State "to enter into evidence in the trial of this case the facts and circumstances of the death and autopsy of Robert Littrell for the limited purposes of showing bent of mind and identity."

Our review of the record confirms Appellant's claim that the trial court did not hold the similar transaction hearing that Rule 31.3 required and Appellant requested. We reject the State's contention that the in-chambers discussion on February 20 was a proper Rule 31.3 hearing. That discussion was off the record, without the defendant present, and not open to the public. That is not a "hearing" within the meaning of Rule 31.3 (B) and our case law.[3]

---

[3] The dissent contends that the in-chambers discussion of similar transaction evidence was a *Williams* "hearing" and then concludes that Appellant is entitled to a new trial because he was not present for the hearing. However, Appellant has never argued that his constitutional right to be personally present at every stage of his criminal proceedings was violated. No such claim was ever enumerated as error, by Appellant pro se or by his trial or appellate counsel, during the extensive motion for new trial proceedings in the trial court; the issue was not mentioned by the trial court in discussing or summarily denying the motion for new trial; and the issue has not been enumerated as error on appeal. Indeed, the dissent's view is in tension with the claim Appellant has consistently made, which is that "[t]he trial court erred in failing to hold the required hearing as to the admissibility of the evidence." Appellant's Brief at 31 (Enumeration 10). And the only reference to the Constitution that Appellant makes is his argument that he was deprived of his right to due process based on the trial court's failure to hold a hearing in violation of USCR 31.3 and the case law. See Appellant's Brief at 32. The dissent asserts that "[t]he State construes this enumeration" as a right-to-be-present claim. Dis. Op. at 811. However, an appellee cannot raise errors the appellant has not enumerated; the District Attorney's brief does not mention the constitutional right to be present; and the Attorney General's brief does so only in a single paragraph. Indeed, Appellant's reply brief, filed in "rebuttal" to the State's arguments, still did not argue that he was denied the right to be present.

There is no "wrong for any reason" doctrine, and this Court will not reverse a judgment on an issue never raised or ruled on in the trial court or enumerated by the Appellant on appeal — a rule that is particularly important when the issue involves a new application of constitutional law. See, e.g., *Davis v. Harpagon Co., LLC*, 283 Ga. 539, 542 (661 SE2d 545) (2008) ("[W]e do not reach constitutional questions which have not been considered and distinctly ruled on by the trial court."); *Chanin v. Bibb County*, 234 Ga. 282, 292 (216 SE2d 250) (1975) ("The due process argument was not ruled upon by the trial court, nor was the failure to rule thereon enumerated as error. Accordingly, neither of these two contentions is properly before us on this appeal, and we do not decide them."). See also *Woodard v. State*, 269 Ga. 317, 325 (496 SE2d 896) (1998) (Carley, J., joined by Hunstein, J., dissenting) ("Woodard

In addition, the trial court did not make all three on-the-record findings necessary to admit similar transaction evidence. Even if we construe the court's February 23 order as a finding that the State offered the similar transaction evidence for an appropriate purpose — namely, bent of mind and identity — the court made no explicit finding that there was sufficient evidence to establish that Appellant committed the independent offense or that there was sufficient similarity between the independent offense and the crime charged so that proof of the former tends to prove the latter. See *Williams*, 261 Ga. at 642 & n. 3. Moreover, in light of the circumstantial nature of the State's case against Appellant and the power of the similar transaction evidence that was admitted, we are unable to say that the trial court's errors were harmless. See *Lindsey v. State*, 282 Ga. 447, 450 (651 SE2d 66) (2007) ("The test for determining nonconstitutional harmless error is whether it is highly probable that the error did not contribute to the verdict.").

The remedy that Georgia's appellate courts have applied in these circumstances is to remand the case to the trial court to conduct a proper Rule 31.3 hearing and, if the similar transaction evidence is determined to be admissible, to enter the findings required by *Williams*. See, e.g., *Sheppard v. State*, 294 Ga. App. 270, 273 (669 SE2d 152) (2008). See also *Stewart*, 263 Ga. at 845 (remanding for a hearing on the admissibility of prior difficulties evidence, which was treated as similar transaction evidence at that time). This Court has done the same in analogous situations where the trial court failed to hold a required hearing. See, e.g., *McNeal v. State*, 263 Ga. 397, 398-399 (435 SE2d 47) (1993) (remanding for the in-camera hearing required by *Tribble v. State*, 248 Ga. 274 (280 SE2d 352) (1981), to determine the State's compliance with *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963)); *Lewis v. State*, 262 Ga. 679, 680-681 (424 SE2d 626) (1993) (remanding for a hearing required by *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986)).

"Should the trial court determine that the State's evidence concerning the prior transactions does not comport with the requirements set out in *Williams*, supra, a new trial will be required." *Hall v. State*, 230 Ga. App. 741, 743 (497 SE2d 603) (1998).

---

did not raise, and the trial court did not rule upon, any equal protection challenge to this statute. Since the trial court upheld the statute against an attack based solely on confrontation grounds, this court's review must also be so limited."). Indeed, even in "plain error" review, we require that "an appealing party properly assert[ ] an error." *State v. Kelly*, 290 Ga. 29, 32 & n. 2 (718 SE2d 232) (2011) (citing Supreme Court Rules 19 and 22 regarding enumeration of errors and argument and authority). Accordingly, we express no view on the constitutional issue discussed in the dissent.

"On the other hand, if the evidence meets the standards of Rule 31.3 (B) and *Williams*, a new trial is not required[,]" . . . and the trial court may re-enter its judgment of conviction against [Appellant], who may then take an appeal from that judgment in accordance with OCGA §§ 5-6-37 and 5-6-38.

*Sheppard*, 294 Ga. App. at 274 (citation omitted).[4]

3. We do not address Appellant's remaining enumerations of error because they relate to issues that are not likely to recur in the event of a retrial. He may raise them again in a renewed appeal if the trial court does not grant a new trial and re-enters the judgment of conviction.

*Judgment vacated and case remanded with direction. All the Justices concur, except Hunstein, C. J., and Benham, J., who dissent.*

HUNSTEIN, Chief Justice, dissenting.

Because the defendant was denied his constitutional right to be present during the in-chambers conference at which the State presented the similar transaction evidence that it intended to introduce at trial, I would reverse and remand for a new trial.

While the Court of Appeals has adopted the majority opinion's remedy of remanding for a pre-trial hearing on similar transaction evidence after a jury has convicted the defendant, this resolution makes meaningless the requirement that the trial court rule on the admissibility of the evidence prior to the jury hearing it. See *Williams v. State*, 261 Ga. 640 (2) (409 SE2d 649) (1991). Holding a post-conviction pre-trial hearing is an oxymoron and fails to afford the necessary due process. "The purpose of the notice requirement contained in USCR 31.3 is to provide a criminal defendant adequate notice of the State's intent to use similar transactions to enable the defendant to resolve questions regarding admissibility of such evidence before trial." *Brown v. State*, 307 Ga. App. 99, 102 (2) (704 SE2d 227) (2010) (Citation and punctuation omitted). If the rationale for a pre-trial hearing on similar transaction evidence is to enable defendants to adequately prepare for trial, there is little use in giving them notice and the opportunity to be heard on the evidence after

---

[4] There is nothing "oxymoron[ic]," Dis. Op. at 810, about the remedy that this Court and the Court of Appeals have applied in this situation. This case does not involve similar transaction evidence being admitted without notice or by surprise. Appellant was fully aware of the evidence the State planned to offer and the trial court's order admitting that evidence. What he did not receive was a proper Rule 31.3 hearing about whether the evidence should be admitted and the findings needed for proper appellate review of the trial court's decision. Trial courts should certainly comply with the rule and cases directing that those steps be taken before similar transaction evidence is admitted, but where necessary, the steps can be replicated on remand to ensure that the evidence was properly admitted. Only if it was not would Appellant be entitled to a new trial.

the jury has returned its verdict.

Unlike the majority, I believe the trial court held a *Williams* hearing during the off-the-record, in-chambers discussion. At this conference, the State presented the similar transaction evidence that it intended to introduce at trial, and Moore's attorney objected to the trial court's ruling on its admissibility. It is undisputed that Moore was not present at this hearing. The Court of Appeals has concluded that a prosecutor's statement in his or her place about the relevant facts the State expects to show at trial is sufficient to satisfy the requirements of a pre-trial hearing on similar transaction evidence. See, e.g., *McCann v. State*, 203 Ga. App. 880 (1) (418 SE2d 144) (1992) (relying on prosecutor's statement of what he expected to show at trial to uphold trial court's finding of sufficient similarity).

Under our Appellate Practice Act, which must be liberally construed, we have a responsibility to "carefully examine the appellate record to understand better the trial court errors an appealing party is holding up to appellate scrutiny," *Felix v. State*, 271 Ga. 534, 538 (523 SE2d 1) (1999). Proceeding pro se in this appeal, Moore contends that the trial court erred in failing to hold the required hearing on the admissibility of evidence, allowing the jury to hear arguments by the prosecutor about the similar transaction, and admitting the similar transaction into evidence without meeting the requirements of *Williams*. In support, he argues that the trial court's failure to hold a hearing was a violation of due process. The State construes this enumeration as alleging that the trial court erred in admitting the similar transaction evidence and having a discussion in chambers when Moore was not present. Like the State, I construe Moore's stated objections to encompass the argument that he had a right to be present during the discussion on the similar transaction evidence.

The Georgia Constitution guarantees a criminal defendant the right to be personally present at every stage of the proceedings against him. 1983 Ga. Const., Art. I, Sec. I, Par. XII; *Tiller v. State*, 96 Ga. 430 (1) (23 SE 825) (1895). This right is based on due process of law and attaches at every critical stage of a criminal trial where the defendant's presence is necessary to contribute to the fairness of the proceedings. See *Huff v. State*, 274 Ga. 110 (2) (549 SE2d 370) (2001). Unless the defendant waives his right to be present or acquiesces to his absence, *Brooks v. State*, 271 Ga. 456, 457 (2) (519 SE2d 907) (1999), we have consistently found that the claim is not subject to a harmless error analysis on direct appeal. *Holsey v. State*, 271 Ga. 856, 860-861 (5) & n. 11 (524 SE2d 473) (1999) (listing cases).

We have determined that a "critical stage" in a criminal proceeding is one in which the "'defendant's rights may be lost,

defenses waived, privileges claimed or waived,'" or the outcome of the case may be substantially affected. *Huff v. State*, 274 Ga. at 111 (quoting *Ballard v. Smith*, 225 Ga. 416, 418 (2) (169 SE2d 329) (1969)). Thus, we have concluded that the defendant's right to be present attaches to the following critical stages of a trial: jury selection, presentation of evidence, hearing on a motion to disqualify defense counsel, closing arguments, substantive communications with jurors, and resentencing. See, e.g., *Fair v. State*, 288 Ga. 244 (3) (702 SE2d 420) (2010) (evidentiary hearing on motion to disqualify co-defendant's attorneys); *Dawson v. State*, 283 Ga. 315 (5) (658 SE2d 755) (2008) (presentation of testimony to the jury); *Shaheed v. State*, 274 Ga. 716 (559 SE2d 466) (2002) (amendment of sentence imposing harsher punishment); *Brooks*, 271 Ga. at 456-457 (striking of jurors); *Hanifa v. State*, 269 Ga. 797 (6) (505 SE2d 731) (1998) (colloquy between the trial judge and jury); *Wilson v. State*, 212 Ga. 73, 75-78 (90 SE2d 557) (1955) (solicitor-general's argument to the jury). Similarly, I would hold that the hearing to determine the admissibility of similar transaction evidence under *Williams* is a critical stage of a trial proceeding. Cf. *McClarity v. State*, 234 Ga. App. 348 (4) (506 SE2d 392) (1998) (defendant's presence is required at the similar transactions hearing because it is either an evidentiary matter or involves an evidentiary question).

In this case, Moore's right to be present was violated because there was a reasonably substantial relationship between Moore's presence during the in-chambers discussion and his ability to defend against the charges. The similar transaction evidence involved a death that Moore contended was an accident as a result of his overzealous attempt to resuscitate a man who had stopped breathing while under his care. A comparison of the independent act with the crimes charged involved facts that were within his personal knowledge and to which he could make a meaningful contribution. Moore was an active partner in his defense. He identified five persons, including three connected to Littrell's death, that he wanted called as witnesses; engaged in discussions conducted outside the jury's presence; requested that his trial and appellate counsel ask specific questions of witnesses; and elected to represent himself on appeal "to get the truth on the record."

Given Moore's right to participate in his own defense and the prejudicial effect of the independent act evidence to his defense against the charges for which he was standing trial, I would conclude that his presence during the in-chambers conference was necessary to contribute to the fairness of the proceeding. Because his exclusion from the discussion on the admissibility of the similar transaction evidence violated his constitutional right to be present at a critical

stage of his trial and he did not waive his right to be present, I would reverse.

I am authorized to state that Justice Benham concurs in this dissent.

DECIDED MARCH 23, 2012 —
RECONSIDERATION DENIED APRIL 11, 2012.

Calvin Moore, *pro se.*

C. *Paul Bowden, District Attorney, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Sara K. Sahni, Assistant Attorney General,* for appellee.