## A97A1322. BAILEY v. THE STATE.
(494 SE2d 672)

ELDRIDGE, Judge.

On November 8, 1996, in Sumter County, Paula Bailey, appel-

lant, was stopped by State Trooper Mike Gurley for doing 87 mph in a 55 mph zone. After Trooper Gurley had filled out the citation for speeding and given it to appellant, he noted that her speech was slurred and believed that he detected the odor of alcohol on her breath.

Appellant was requested to step out of the car. The stop was videotaped by a camera in the patrol car; however, the day was windy so that the oral responses could not be picked up by the video camera microphone. Further, the wind could distort any leg raise, straight line, or balance tests in a field sobriety battery of tests, so the Trooper did not administer any of the tests. Instead, the Trooper asked appellant to submit to an alcosensor test. When appellant twice registered positive for the presence of alcohol on the alcosensor test, appellant was placed under arrest for driving under the influence of alcohol to the extent that it was less safe to drive, under OCGA § 40-6-391 (a) (1). Immediately upon the arrest of appellant, Trooper Gurley read to appellant her implied consent warnings and told her that she would have to have a blood sample taken; reluctantly she consented. Appellant was transported to the Sumter County Hospital for a blood-alcohol test. The blood sample was drawn by Jody Cromer, an LPN, who routinely drew blood both for medical procedures, as well as for alcohol determinations, as a part of her work as an LPN. The evidence showed that the blood sample was taken in the standard fashion.

Appellant wanted a breath test performed. At about 3:00 p.m., after providing the blood sample, appellant was taken to the Sumter County Sheriff's Office for the breath test; two successful breath tests were run showing .112 and .106 mg./deciliter of blood. The appellant did not seek to place such results into evidence.

Toxicologist Michelle Basham-Foster received B.A. and M.A. degrees in chemistry in 1984; had worked from 1988 until 1990 for the Armed Forces Institute of Pathology in Washington, D. C., making alcohol determinations with gas chromatography; and had been employed by the State Crime Laboratory as a toxicologist since 1990. While she had certificates from the crime laboratory to perform such tests, she did not bring such permits to court. She testified that the gas chromatography equipment that she used at the State Crime Laboratory had been approved by the Crime Laboratory Director, but that she did not have the certificate if one was, in fact, issued. On November 19, 1996, Ms. Basham-Foster retrieved appellant's sealed blood sample and performed one gas chromatography test on the sample, along with a standard; appellant's blood sample showed .13 mg. of alcohol/per deciliter of blood.

Both Trooper Gurley and toxicologist Basham-Foster testified that .13 mg./deciliter was a sufficiently high concentration so as to

render an individual less safe to operate a motor vehicle. Trooper Gurley testified that driving 87 mph in a 55 mph zone, as well as the physical manifestations, positive alcosensor tests, and .13 blood alcohol level would, in his opinion, render appellant less safe to operate a motor vehicle.

Appellant made a motion to suppress and a motion in limine as to the blood test on the basis that OCGA § 40-6-392 had not been complied with; there was no showing of certification by the State Crime Laboratory to perform the test. Both motions were denied.

On January 27, 1997, appellant pled guilty to speeding, but entered a not guilty plea to the DUI charge. Appellant was tried by a jury, which convicted her on January 28, 1997. Notice of appeal was filed January 29, 1997.

1. Appellant's first enumeration of error is that the trial court failed to suppress the blood test results when the State failed to show compliance with OCGA § 40-6-392 (a) (1) (A), both in the certification of the laboratory procedure and as to the permitting of the technician who performed the analysis. We do not agree.

OCGA § 40-6-392 (a) (1) (A) has been satisfied when there is compliance with Chapter 92-3 of the Rules of the Georgia Bureau of Investigation: Rule 92-3-.06 (7) provides that "[a]ll blood tests will be performed by the Division of Forensic Sciences, or by an individual authorized in accordance with Rule 92-3-.02 (1) of these regulations." In the case sub judice, the person who conducted the blood testing was a forensic chemist, in the employ of the Division of Forensic Sciences (State Crime Lab) since 1990, and performed the test under the approved procedure using State Crime Laboratory equipment. "Thus we find that the method used to test the blood was approved by the Division of Forensic Sciences. Furthermore, the legislature's delegation of *complete* authority to the Division of Forensic Sciences to regulate blood testing and permitting, including the authority to 'approve satisfactory techniques or methods to ascertain the qualifications and competence of individuals to conduct analyses' authorizes the division to determine the competence of its own personnel to conduct such an analysis. Under such circumstances, we do not believe the legislature intended to require the Division of Forensic Sciences, as the permit issuing authority, to issue a permit to itself. Accordingly, we also find the Division of Forensic Sciences' forensic chemist was authorized to conduct the test under OCGA § 40-6-392 (a) (1) and find no error in the admission of [her] testimony regarding the analysis performed on [appellant's] blood samples." *Lewis v. State*, 215 Ga. App. 486, 489 (2) (451 SE2d 116) (1994); see also *Jordan v. State*, 223 Ga. App. 176, 178-180 (2) (477 SE2d 583) (1996); *Martin v. State*, 214 Ga. App. 614, 617-618 (3) (448 SE2d 471) (1994).

The employees of the State Crime Laboratory, when performing

their jobs in the State Crime Laboratory, do not have to prove that they have been permitted by the State Crime Laboratory to perform their jobs. If, in fact, such State Crime Laboratory employee has been permitted to perform lab tests approved by the State Crime Laboratory, then their testimony to such fact is sufficient, and the permit does not have to be placed in evidence. See *Jordan v. State*, supra at 178-180; *Lewis v. State*, supra at 489; *Martin v. State*, supra at 616.

If the State Crime Laboratory performed the test, then the testing procedure and equipment have been approved within the meaning of OCGA § 40-6-392 (a) (1) (A). *Lewis v. State*, supra at 488-489; see also *Jordan v. State*, supra at 179; *Martin v. State*, supra at 616.

Both *State v. Baker*, 146 Ga. App. 608, 609 (247 SE2d 160) (1978) and *Willoughby v. State*, 153 Ga. App. 434, 435-436 (1) (265 SE2d 352) (1980), are distinguishable from the case sub judice both on the facts and law. In *Baker*, the breathalyzer test was performed by a police officer and the origin of the machine was unstated. Thus, compliance with Ga. L. 1974, pp. 633, 672 (now OCGA § 40-6-392) had not been shown, nor had it been shown that such procedures were approved by the State Crime Laboratory. In the case sub judice, the State Crime Laboratory's own personnel performed the test with the State Crime Laboratory's own equipment using the State Crime Laboratory's standard procedures.

Further, the General Assembly delegated the selection of testing methods, procedures, equipment, and permitting of operators to the State Crime Laboratory so that when testing is done, by anyone other than the State Crime Laboratory itself, there will be uniformity of reliability, quality, performance, and skill, not only by the operators, but also as to the equipment, methods, and procedures. The holdings of *Baker* and *Willoughby* still apply to tests performed by anyone *other* than the State Crime Laboratory personnel, and require either proof of approval by regulations, or testimony that the equipment, methods, and procedures utilized have the approval of the State Crime Laboratory. See *Corner v. State*, 223 Ga. App. 353, 354 (477 SE2d 593) (1996); see also *Cullen v. State*, 223 Ga. App. 356 (477 SE2d 620) (1996); *Stewart v. State*, 165 Ga. App. 62, 63 (2), (3) (299 SE2d 134) (1983).

2. The second enumeration of error is that the verdict is contrary to the evidence and against the weight of the evidence. We do not agree.

The evidence showed that appellant had been speeding; that she had the odor of alcohol on her breath; that appellant admitted to drinking alcohol within the last 14 hours; and that, in the opinion of the arresting trooper, appellant was less safe to operate a motor vehicle than if she had not been drinking alcohol. There was further evidence of a positive alcosensor test and blood test results which

showed that appellant, at the time of testing, had .13 mg. of alcohol/deciliter of blood.

"On appeal we must view the evidence in the light most favorable to the verdict, [appellant] no longer enjoys the presumption of innocence, and we do not weigh the evidence nor judge the credibility of the witnesses. Further, we do not speculate which evidence the jury chose to believe or disbelieve." (Citations and punctuation omitted.) *Thompson v. State*, 210 Ga. App. 655, 656 (436 SE2d 799) (1993); see also *Ogletree v. State*, 211 Ga. App. 845, 847 (440 SE2d 732) (1994). In the case sub judice, the evidence introduced at trial was sufficient to authorize a rational trier of fact to find appellant guilty beyond a reasonable doubt of the offense of DUI. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

3. The third enumeration of error is that the trial court erred in not allowing defense counsel to view the videotape of appellant's stop and arrest.

*Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963) ("*Brady*"), controls what must be disclosed as a matter of due process, i.e., that which is either exculpatory of the crime or impeaching of any witness. Appellant contends that pursuant to *Brady*, she "was entitled to inspect and examine anything in the State's possession which is or may be exculpatory." This is an incorrect interpretation not only of *Brady* but also the Georgia decisions applying *Brady*.

The prosecution, upon a *Brady* motion, has the duty to produce anything that is exculpatory or impeaching. If the defense counsel has filed a discovery motion seeking *Brady* materials and the prosecution denies that any exculpatory or impeaching materials exist, then the defense counsel must move for the trial court to make an in camera inspection of the prosecutor's file and must ask that the record be preserved by the trial court, requesting that the court order a sealed copy to be placed in the record for possible appellate review. *Hicks v. State*, 232 Ga. 393, 394 (207 SE2d 30) (1974); see also *Hines v. State*, 249 Ga. 257, 258-259 (1) (290 SE2d 911) (1982); *Jenkins v. State*, 215 Ga. App. 540, 543 (3) (451 SE2d 457) (1994); *Stewart v. State*, 210 Ga. App. 474, 475 (3) (436 SE2d 679) (1993); *Broom v. State*, 209 Ga. App. 42, 43 (432 SE2d 823) (1993); *Boatright v. State*, 192 Ga. App. 112, 113 (2) (385 SE2d 298) (1989); *Hayes v. State*, 168 Ga. App. 94, 95 (3) (308 SE2d 227) (1983); *Holbrook v. State*, 162 Ga. App. 400, 401 (291 SE2d 729) (1982). In the case sub judice, the appellant made such motion.

It does not appear that the trial court made an in camera inspection either of the prosecutor's file or of the videotape of the stop and arrest of appellant. However, in her brief before this Court, appellant's counsel makes an admission in judicio that after trial, defense counsel viewed the videotape; appellant does not assert that the

videotape contained any *Brady* materials and asserts only that the untimely opportunity to view the tape was error under *Brady*. Absent a showing that the videotape was either exculpatory or impeaching, the videotape was not discoverable under *Brady*, so that denial of the motion by the trial judge was not error. *Stewart v. State*, 210 Ga. App. at 475. Had defense counsel made a motion for new trial, instead of filing a direct appeal, any *Brady* materials contained in the videotape that he saw after trial could have been set out in such special grounds in the motion for new trial, with his affidavit attached. Thus, the trial court could have developed a record and ruled.

Fundamental to any error based upon a violation of *Brady* is that appellant must prove that: (1) the state possessed evidence *favorable* to the defense, i.e., true *Brady* material; (2) the defense did not possess the evidence, nor could she obtain it herself with any reasonable diligence; (3) the prosecution suppressed the favorable evidence; (4) she was denied access to such evidence during trial; (5) the disclosure would have *benefitted* the defense by providing evidence for the defense or impeaching prior inconsistent statements; and (6) the denial deprived her of a fair trial, i.e., a reasonable probability exists that the outcome of the proceedings would have been different had disclosure been made. *Burgeson v. State*, 267 Ga. 102, 104 (2) (475 SE2d 580) (1996); *Zant v. Moon*, 264 Ga. 93, 100 (3) (440 SE2d 657) (1994); *Dennard v. Dennard*, 263 Ga. 453, 454-455 (4) (435 SE2d 26) (1993); *Shearer v. State*, 259 Ga. 51 (1) (376 SE2d 194) (1989); *Wallin v. State*, 248 Ga. 29, 32-34 (6) (279 SE2d 687) (1981).

In the case sub judice, where appellant had an opportunity after trial to examine the materials and no showing is made as outlined in steps 1 through 6 above, there is no violation of *Brady*. *McNeal v. State*, 263 Ga. 397, 398-399 (435 SE2d 47) (1993); *Carpenter v. State*, 252 Ga. 79 (2) (310 SE2d 912) (1984); *Hill v. State*, 250 Ga. 164 (2) (295 SE2d 838) (1982).

4. The fourth and final enumeration of error is that the trial court improperly gave a charge on expert witnesses. We do not agree.

The State Crime Laboratory technician, the licensed practical nurse, and the State Troopers all qualified as expert witnesses by their training, education, and experience. OCGA § 24-9-67; *Brown v. State*, 245 Ga. 588 (266 SE2d 198) (1980); *Bowden v. State*, 239 Ga. 821 (238 SE2d 905) (1977); *Smith v. State*, 127 Ga. 56 (56 SE 116) (1906); *Robinson v. State*, 203 Ga. App. 759, 761 (5) (417 SE2d 404) (1992); *Evans v. State*, 176 Ga. App. 818, 822 (3) (338 SE2d 48) (1985). The status of a witness, whether an expert or a layperson, does not go to admissibility of the testimony, but goes only to the weight and credibility of the witness. *McLelland v. State*, 203 Ga. App. 93 (416 SE2d 340) (1992). It is within the sound discretion of

the trial court to determine if a witness is or is not an expert and to allow expert testimony to be given regarding matters of science. *Lewis v. State*, 214 Ga. App. 830, 832 (449 SE2d 535) (1994); *Smith v. State*, 210 Ga. App. 451, 452 (3) (436 SE2d 562) (1993). Such legal determination may be made outside the presence of the jury. When a witness is allowed to testify in the presence of the jury as an expert, the testimony itself indicates to the jury that this witness has been determined by the court to be an expert and allowed to give such expert testimony. Thus, there was no error in the court's charge.

*Judgment affirmed. Birdsong, P. J., and Ruffin, J., concur.*

DECIDED JUNE 9, 1997 —
RECONSIDERATION DENIED DECEMBER 17, 1997 — 

*Hagler, Hyles, Adams & McKenna, Clark C. Adams, Jr.*, for appellant.

*Howard S. McKelvey, Jr., Solicitor*, for appellee.