## A99A2060. MITCHELL v. THE STATE.
### (531 SE2d 143)

PHIPPS, Judge.

Dennis Mitchell appeals his conviction of burglary. He claims the trial court erred by: (1) admitting improper hearsay testimony identifying him as the burglar; (2) admitting improper hearsay testimony regarding his possession of items stolen in the burglary; (3) allowing expert testimony of fingerprint evidence from a nonexpert witness; (4) failing to grant a mistrial on the ground that the State's use at trial of his fingerprint card from a prior arrest placed his character in issue; and (5) misstating in a jury instruction that the court bore the burden of proving Mitchell guilty beyond a reasonable doubt. Mitchell also asserts his trial lawyer rendered ineffective assistance because he did not obtain and present expert testimony to combat the State's fingerprint evidence.

We find that the out-of-court statement regarding Mitchell's identity was admissible to explain the reasonableness of the police investigation. The statement regarding Mitchell's possession of the stolen articles was admissible as a prior consistent statement. The State's witness on fingerprint identification was properly allowed to render his opinion. The manner in which the prior fingerprint card was used did not place Mitchell's character in issue. The court's misstatement did not prejudice Mitchell in the context of the jury charge taken as a whole. And, finally, Mitchell has not shown that he was prejudiced by deficient performance from his trial counsel. For these reasons, we affirm the judgment of the court.

1. In his opening statement, Mitchell's attorney asserted that he expected the evidence to show: "[t]hat the police and the state singled Mr. Mitchell out . . . [,] did not use the process of elimination . . . [,] made up their mind from the beginning[,] and didn't do anything to disprove that or just test that."

Because Mitchell had challenged the adequacy of the police investigation of other suspects, the State was allowed to present evidence to explain the reasonableness of the investigation's focus on Mitchell, including testimony of out-of-court conversations.[1] The court did not err in allowing a detective to explain that Mitchell had become a suspect through information received from an unidentified person.

---

[1] See *Holmes v. State,* 266 Ga. 530, 531 (2) (468 SE2d 357) (1996); accord OCGA § 24-3-2.

2. At trial, Sharimar Floyd testified that Mitchell was her boyfriend at the time of the burglary and that around that time Mitchell gave wristwatches to her and a friend. The watches were traced to the burglary. During the cross-examinations of Floyd and the investigating detective, defense counsel raised the issue of whether Floyd was motivated to give false testimony because she had a pending drug charge and wanted to court favor with the State and because there may have been a reward offered for information on the perpetrator of this burglary. Mitchell asserts the court erred in allowing the State to elicit redirect testimony from the detective that Floyd told him before she was charged with the drug offense that Mitchell had given her and her friend the watches.

"Where the veracity of a witness is expressly or impliedly [placed in] issue, . . . and that witness is present at trial, under oath, and subject to cross-examination, the prior consistent out-of-court statement of the witness is admissible. [Cits.]"[2] Floyd was present at trial and available for cross-examination, and Mitchell had placed her veracity at issue. The testimony was properly admitted.

3. Detective Ted McDonald testified that Mitchell's fingerprints matched a print found at the burglary scene. Mitchell asserts McDonald was not qualified to so testify because the court had refused to qualify him as an expert in the field of fingerprint comparisons.

A witness may become qualified to render an expert opinion without ever being formally so declared by the court.[3]

> The requirements for qualification as an expert are minimal; generally, nothing more is required to qualify an expert than evidence that the person has been educated in a particular trade, science or profession. [Cits.] Formal education or training in an area of expertise is not necessary, provided the witness possesses the qualifications of such area of expertise through skill and experience. [Cit.][4]

Additionally, where a witness renders an opinion after his capacity to do so has been established, the witness's status as lay or expert goes only to the credibility of the witness's testimony and not to its admissibility.[5]

---

[2] (Emphasis omitted.) *McGee v. State*, 205 Ga. App. 722, 726 (9) (423 SE2d 666) (1992); accord *Woodard v. State*, 269 Ga. 317, 320 (2) (496 SE2d 896) (1998); *Carter v. State*, 238 Ga. App. 708, 710 (2) (520 SE2d 15) (1999).

[3] See *In the Interest of C. W. D.*, 232 Ga. App. 200, 207 (3) (501 SE2d 232) (1998).

[4] Id. at 206.

[5] See *Bailey v. State*, 229 Ga. App. 869, 874 (4) (494 SE2d 672) (1997); *McLelland v. State*, 203 Ga. App. 93, 95 (6) (416 SE2d 340) (1992).

There is no question that McDonald was qualified to render an expert opinion on fingerprint comparisons. McDonald testified that he worked at the time in the criminal investigation section of the Glynn County Police Department; that he had completed several courses in fingerprint development and classification; that in the four and a half years he had been performing fingerprint comparisons, he had performed possibly thousands; that he had made hundreds of identifications verified as correct by others and that he had never been wrong in any of his identifications.

The record also indicates that the court at least tacitly accepted him as an expert. After the prosecutor tendered McDonald as an expert, the court refrained from declaring that McDonald qualified as an expert witness, saying "that would be up to the jury." But the court did tell the prosecutor he could proceed with his examination of McDonald. And the court's later charge on expert witnesses stated that "testimony has been given by certain witnesses who in law are termed experts." McDonald was the only witness tendered as an expert. No evidence was presented regarding the expert qualifications of any other witness.

It appears the court chose not to announce McDonald's status as an expert because it did not wish to influence the weight that the jury might place on his testimony.[6] The court did not err in admitting McDonald's testimony.

4. Based on information linking Mitchell to this burglary, a comparison between Mitchell's fingerprints and those lifted from the burglary scene was performed before Mitchell was arrested. To perform such a comparison, the police used Mitchell's prints from a prior arrest. After the positive match using the old set of prints, Mitchell was arrested, and a new set of prints was taken from him. The police compared the new set of prints to those lifted at the crime scene and again got a positive match.

Detective McDonald, who performed the comparisons, testified about the process of identifying one of the prints from the scene as Mitchell's. Mitchell's print card from the former arrest was shown to McDonald at trial, and McDonald identified it as Mitchell's through the Social Security number and date of birth printed on the card. The card was later admitted into evidence for the record only. It was never shown to the jury or sent out with the jury during deliberations.

After McDonald identified the old fingerprint card as Mitchell's, but before it was admitted into evidence, Mitchell's counsel moved for

---

[6] See *McCoy v. State*, 237 Ga. 118, 119 (227 SE2d 18) (1976) (jury considers expert's credentials and gives such weight and credit to his testimony as it sees fit).

mistrial on the ground that the visual presence of the old card was placing Mitchell's character into evidence. The court denied the motion for mistrial, and Mitchell asserts that ruling was erroneous.

Where, as here, no information was presented to the jury regarding the defendant's prior arrest and the jury never had the opportunity to glean such information from the fingerprint card itself, the presence and "admission of [the] fingerprint card[ ] alone . . . [do] not introduce character into evidence. . . ."[7] The court did not err in denying Mitchell's motion for mistrial.

5. In its final charge to the jury the court stated, "Your only issue that you are to decide is to whether or not the *court* has proved the defendant guilty beyond a reasonable doubt."[8] Mitchell asserts the misstatement prejudiced him and possibly conveyed an opinion of the evidence to the jury, which would violate OCGA § 17-8-57.

" 'The charge to the jury is to be taken as a whole and not out of context when making determinations as to correctness of same.' [Cit.]"[9] A review of the court's charge to the jury shows that before the misstatement the court had correctly instructed the jury several times that the State bore the burden of proof beyond a reasonable doubt. And at no time was the jury misinformed as to the substance of the actual burden. While a correct instruction will not necessarily cure an erroneous one on the same point,[10] we find under the circumstances of this case that the court's substitution of "the court" for "the State" amounted to a "palpable 'slip of the tongue' and clearly could not have misled or confused the jury."[11] Nor do we find the court's misstatement amounted to an expression of opinion on the evidence by the court.

6. To prevail on an ineffectiveness claim, a defendant must make two showings.

> (1) that counsel's performance was deficient, i.e., that counsel's performance was not reasonable under all the circumstances, and (2) that this deficient performance prejudiced the defense, i.e., that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . A reviewing court need not address both components if the defendant makes an insufficient showing on one, nor must the components be addressed in any particular order.[12]

---

[7] *Keller v. State*, 231 Ga. App. 546, 548 (4) (499 SE2d 713) (1998).

[8] (Emphasis supplied.)

[9] *Mitchell v. State*, 225 Ga. App. 26, 28-29 (2) (482 SE2d 419) (1997).

[10] See *Bryant v. State*, 191 Ga. 686, 688 (13) (13 SE2d 820) (1941).

[11] *Caldwell v. State*, 167 Ga. App. 692, 695 (4) (307 SE2d 511) (1983).

[12] (Citations and punctuation omitted.) *Ponder v. State*, 201 Ga. App. 388, 389 (1) (411

Mitchell has not proffered what an expert witness on fingerprint comparisons would have testified on his behalf. And "[a]bsent such a proffer, [Mitchell] cannot show there is a reasonable probability that, but for trial counsel's failure to call [an] expert as a witness, the trial's result would have been different."[13]

Also, the record does not establish that counsel's failure to seek and present expert testimony was unreasonable. At the hearing on Mitchell's motion for new trial, counsel testified that he did not seek expert analysis of McDonald's fingerprint comparison because he had found in previous cases that McDonald was honest and very competent in his work. He had received full and timely discovery from the State regarding its fingerprint evidence and was able to elicit from McDonald on cross-examination that a palm print lifted from a window at the scene did not match Mitchell's, that McDonald had been asked only to compare Mitchell's prints to those lifted from the scene, and that McDonald had quickly concluded within 30 minutes of that request that Mitchell's print matched one of those. There is no contention that there was any other exculpatory information pertaining to the fingerprints. We find Mitchell has not carried his burden of establishing ineffective assistance of counsel.

Because we find no error in the enumerations raised by Mitchell, we affirm his conviction.

*Judgment affirmed. Johnson, C. J., and McMurray, P. J., concur.*

DECIDED MARCH 10, 2000.

*Steven L. Morgan*, for appellant.
*Stephen D. Kelley, District Attorney, C. Keith Higgins, Assistant District Attorney*, for appellee.

---

SE2d 119) (1991).
   [13] *Ross v. State*, 231 Ga. App. 793, 797-798 (2) (499 SE2d 642) (1998) (citing *Ponder*, supra); *Goodwin v. Cruz-Padillo*, 265 Ga. 614, 615 (458 SE2d 623) (1995).