A01A0924. RILEY v. THE STATE.
(553 SE2d 374)

MILLER, Judge.

This is the second appearance of this case before this Court. In *Riley v. State*,[1] we affirmed Lamar Riley's conviction for aggravated assault with intent to rob but remanded the case, directing the trial court to conduct a post-trial inspection of the State's file to consider a purported violation of *Brady v. Maryland*.[2] At issue was whether a prosecution witness had been under arrest when he implicated Riley in the crimes. After examining the State's file, the trial court found no additional information to resolve that factual dispute. Having considered the alleged violation of *Brady* and finding it lacking in merit, we affirm.

Riley and co-defendant, Savin Dix, attempted to rob a convenience store at closing time.[3] During the botched robbery, Dix fired his pistol at the store owner rendering him a paraplegic.[4] A store employee witnessed the shooting and identified Dix as the shooter and Riley as his accomplice. Shortly after the shooting, a neighbor described the physical appearance of Riley and Dix, as did the victim's wife.

Three days after the failed robbery, Antonio Martin and three other men were brought in for questioning about the shooting at the convenience store. Detective M. Walker, the lead investigator, interviewed Martin whom he initially considered a suspect because Martin seemed to fit the description of Dix. After advising Martin of his rights, Walker took a statement from Martin who then signed it. In that statement, Martin said that he overheard an argument in which Dix was accusing Riley of not doing his part in the aborted robbery. According to the statement, Martin heard Dix argue, "after I shot, you were supposed to have busted [sic] the window and got the money out [sic] the car." Martin told the detective that he overheard Dix say that he fired three shots from his gun. Ultimately, information obtained from Martin, the victim's wife, the store employee, and the neighbor resulted in the arrest of Riley and Dix.

---

[1] 242 Ga. App. 720, 722 (2) (531 SE2d 138) (2000).
[2] 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963).
[3] *Dix v. State*, 246 Ga. App. 338 (540 SE2d 294) (2000).
[4] See id.

During the joint trial of Riley and Dix, Martin appeared as a prosecution witness. Martin, however, repeatedly denied ever hearing anyone discuss the shooting at the convenience store. When confronted with a typed statement dated December 16, 1994, and bearing his signature, Martin developed memory problems and was unable to recall giving the details contained within that statement. Later, he managed to remember having heard Riley and Dix arguing but could not recollect the substance of their argument. After Martin disavowed his statement, the State sought and obtained permission from the trial court to treat him as a hostile witness. Martin remained steadfast in his denials and refused to acknowledge having recently affirmed his earlier statement to an investigator from the district attorney's office. During cross-examinations of Martin by the defense attorneys, Martin acknowledged that criminal charges against him for theft by taking had been dead docketed in July 1994. He expressed ignorance as to whether he could still be prosecuted for those charges. Martin admitted that he was awaiting trial for an unrelated armed robbery.

Martin and Detective Walker disagreed on whether Martin had been placed under arrest for the shooting incident at the convenience store. Although Martin testified, "I was arrested because they thought I was Savin Dix," Detective Walker testified that Martin had merely been a suspect brought in for questioning and denied that Martin was ever arrested for the crimes involved here. According to Walker, because investigators thought that Martin fit the description of one suspect, Martin had been questioned but "he was not under arrest."

Before trial, Riley filed a written request for an in camera inspection of the prosecution's entire file, specifically seeking review of Detective Walker's investigative file for any exculpatory evidence, including witness statements.[5] The trial court denied the request. But whenever a defendant is dissatisfied with the State's response to a request for exculpatory material and makes a proper request, the trial court must conduct an in camera inspection of the State's file.[6] Here that was precisely what the trial court did not do. Nevertheless, a trial court's failure or refusal to conduct the review does not constitute reversible error because that error may be cured by post-trial examination of the State's file.[7] We directed just such review.[8]

---

[5] *Riley*, supra, 242 Ga. App. at 722 (2).

[6] *McNeal v. State*, 263 Ga. 397, 398 (4) (435 SE2d 47) (1993).

[7] *Tribble v. State*, 248 Ga. 274, 276 (3) (280 SE2d 352) (1981).

[8] *Riley*, supra, 242 Ga. App. at 723 (2).

On remand, the trial court found:

> In the context of the foregoing facts [evidence as to whether Martin a/k/a Rooks was under arrest when he made the statement to Detective Walker], . . . [t]he Court has conducted a review of the State's entire file, and finds nothing in the file in further support of Defendant's contention that Mr. Rooks was under arrest when he made the statement to Detective Walker implicating Defendant.

With that finding, the trial court refused to order a new trial. Riley then filed a motion seeking clarification as to what files had been actually reviewed by the trial court. No ruling was forthcoming on that motion.

1. Riley contends that the trial court erred by failing to follow this Court's order to conduct an in camera inspection of the files of Detective Walker. He claims that the trial court reviewed only the prosecutor's file and not Detective Walker's file. Riley's sole support for this allegation is an affidavit filed by his lawyer. In that affidavit, Riley's counsel testified that he "left a message for Mr. Owens [the court's case manager] concerning the order of the court, inquiring whether the Judge had examined in camera Detective Walker's case file, as it was not evident on the face of the order whether this had been done." Counsel testified that he "received a call from Mr. Owens who informed him that it was the position of the court that Detective Walker's case file was not required to be reviewed in camera."

*Riley v. State* made explicitly clear that "[the detective's] files are considered within the possession of the State for purposes of *Brady*."[9] Without question, we contemplated that Detective Walker's case file would be examined by the trial court. But the affidavit offered on behalf of Riley lacks probative value because it is replete with inadmissible hearsay, including the affiant's report of what another person purportedly said that he understood the judge to believe.[10] Nor does the affiant expressly testify that the trial court did not consider the detective's case file. In the absence of evidence to the contrary, we must assume that the trial court considered all of the prosecution's file including Detective Walker's case file.[11] Having reviewed the record provided under seal, we find nothing that contra-

---

[9] *Riley*, supra, 242 Ga. App. at 722 (2).

[10] See *Wright v. State*, 211 Ga. App. 474, 475 (1) (440 SE2d 27) (1993).

[11] The trial court granted Riley's motion for the record to be copied and sealed and directed the inclusion of the State's file in its entirety except for the victim's extensive medical records. It contains, inter alia, paperwork from the Atlanta Police Department, the City of Atlanta Department of Police, as well as a package prepared by Detective Walker on Form 105 of the Atlanta Bureau of Police Services.

venes the finding by the trial court.

2. Riley contends that the trial court erred in concluding that the prosecutor's file contained no evidence that would authorize a new trial. We disagree.

A *Brady* motion imposes an affirmative duty upon the prosecution to produce anything that is exculpatory or useful for impeachment.[12] Fundamental to any error based upon a violation of *Brady*, an appellant must prove that: (1) the State possessed evidence favorable to the defense; (2) the defense did not possess the evidence and could not obtain it with reasonable diligence; (3) the prosecution suppressed the favorable evidence; (4) the defense was denied access to such evidence during trial; (5) the disclosure would have benefitted the defense by providing evidence for the defense or impeaching prior inconsistent statements; and (6) the denial deprived the defendant of a fair trial, i.e., a reasonable probability that the outcome of the proceedings would have been different had disclosure been made.[13] Having examined the record provided under seal, we cannot say that Martin a/k/a Walter Rooks had, in fact, been under arrest on December 16, 1994, at the time that he gave the statement implicating Riley in the crimes. In any event, counsel for Riley and Dix thoroughly cross-examined Martin as well as the detective about this issue and Martin himself testified that he thought that he was under arrest when he was brought in for questioning. Since Dix was in the courtroom while Martin testified, the jury could decide for itself whether the two men bore any resemblance to one another. Riley has not shown that the State suppressed evidence favorable to him or how any alleged failure by the prosecution to reveal any information materially affected his case.[14] Accordingly, the trial court did not err in denying Riley's amended motion for new trial based upon the purported *Brady* violation.[15]

*Judgment affirmed. Andrews, P. J., and Eldridge, J., concur.*

DECIDED AUGUST 2, 2001.

*Steven E. Phillips*, for appellant.

---

[12] *Bailey v. State*, 229 Ga. App. 869, 873 (3) (494 SE2d 672) (1997).

[13] *Burgeson v. State*, 267 Ga. 102, 104 (2) (475 SE2d 580) (1996); *Bailey,* supra, 229 Ga. App. at 874 (3).

[14] See *Bacon v. State*, 207 Ga. App. 39, 40 (427 SE2d 32) (1993) (physical precedent only).

[15] See *Burgeson,* supra, 267 Ga. at 104 (2).

*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Assistant District Attorney*, for appellee.