## A05A1535. ELY v. THE STATE.
### (621 SE2d 811)

ELLINGTON, Judge.

A Floyd County jury found Danny Kaye Ely, Sr. guilty of four counts of aggravated assault, OCGA § 16-5-21; terroristic threats, OCGA § 16-11-37; and simple battery, OCGA § 16-5-23. Ely appeals from the order denying his motion for new trial, contending the State withheld two exculpatory videotaped witness statements in violation of OCGA § 17-16-7 and *Brady v. Maryland,* 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963). Finding no reversible error, we affirm.

Viewed in the light most favorable to the jury's verdicts,[1] the record reveals the following relevant evidence. On October 24, 2003, Danny Kaye Ely, Sr. fought with Evelyn Ely and their two sons, sixteen-year-old Randall and twenty-one-year-old Danny, Jr. This domestic dispute began when Ely, who had been using methamphetamine, came home feeling "ill and cranky." Annoyed by the sight of yard sale clothes on his coffee table, Ely flung his dinner plate out the door, cursed at Evelyn, and then shoved her onto the couch. Randall "stood up" to his father, but did not physically attack him. Ely grabbed Randall, held a pocket knife a few inches from his throat and threatened to cut his head off. Ely forced Evelyn and Randall outside, hitting them both in the face in the process. Both Evelyn and Randall managed to get away from Ely and run toward the driveway.

Danny, Jr., who lived about 20-25 feet away from the main residence in a mobile home, was visiting with friends Dean and Rebecca Coots when the disturbance began. Danny, Jr. and Dean Coots both heard the fight and went outside to investigate. Ely cursed at Danny, Jr. and asked him what he was looking at. Danny, Jr. testified that he saw his father holding a knife and heard his father threaten to cut him. Evelyn testified that Ely said that "if the knife didn't scare [them] enough, he would go get the gun." Ely went inside, came back out with a .12 gauge shotgun, and threatened to shoot everyone. Randall and Danny, Jr. testified that they saw Ely point the shotgun at Evelyn. In fear for his life, Randall fled and hid behind a metal car trailer. According to Dean Coots, Evelyn shouted for Randall to "duck." Coots saw Ely point the shotgun at Danny, Jr. and heard him tell Danny, Jr. to go back inside his mobile home "or he was going to shoot him." Coots also saw Ely point the shotgun at Randall. Terrified, Coots and his wife got in their car and fled.

Moments after the Cootses left, Ely fired the shotgun once. Randall testified that he was not sure where the weapon was aimed because he had taken cover behind the trailer. Danny, Jr. testified

---

[1] *Jackson v. Virginia,* 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

that he did not hear the shotgun blast because he was inside his mobile home with his head between his legs, crying in fear. After firing the weapon, Ely hit Evelyn with the stock of the shotgun, knocking her down. Ely ordered Evelyn and Randall to go inside, get the yard sale clothes from the house, and burn them. The two did as they were ordered.

About 45 minutes later, when it was clear Ely had left the area, Evelyn, Randall, and Danny, Jr. drove to Rome, Georgia, and flagged down a police officer. The officer testified that Randall and Danny, Jr. approached him and took him to Evelyn. The officer noticed that Evelyn had parked her car in a spot where it was not easily seen. He said Evelyn appeared to be "scared to death." Evelyn, Randall, and Danny, Jr. testified at trial that Ely had a history of domestic violence and had beaten them with his fists in the past. Danny, Jr. testified that Ely had once threatened to slash his tires and had threatened Evelyn with a knife. Randall testified Ely offered him a car if he would "tell a different story" at trial about what happened on October 24.

At trial, Ely admitted he argued with his family on that date, but claimed no weapons were involved. He testified he accidentally pushed Evelyn onto the couch, but admitted intentionally striking Randall on the face when the boy "buck[ed] up" to him. He admitted that over the years he and Evelyn "slapped each other." He claimed his family made up the rest of the story because he caught them stealing from him.

1. On appeal, Ely contends the trial court erred in denying his motion for new trial based upon the State's failure to turn over two allegedly exculpatory witness statements. The record shows that after trial, Ely's attorney discovered that an investigator with the Floyd County District Attorney's Office had taken videotaped statements from Randall and Danny, Jr., about a month after the incident, but that the District Attorney's office failed to disclose them in response to pretrial discovery motions. The videotaped statements were taken because both Randall and Danny, Jr. wanted the State to lift a restraining order against Ely, which would allow them both to return to their home even though Ely was living there. Ely contends the failure to disclose the statements is both a *Brady* violation and a violation of the criminal discovery statute, OCGA § 17-16-7.

(a) *Brady*. The Supreme Court of Georgia has explained a *Brady* violation thus:

> Where a prosecutor suppresses evidence favorable to the defense, the State violates the defendant's due process rights. The defense bears the burden of showing (1) that the State possessed evidence favorable to the defense; (2) that the defendant did not possess the evidence nor could he obtain it

> himself with any reasonable diligence; (3) that the prosecution suppressed the favorable evidence; and (4) that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different.

(Citations omitted.) *Zant v. Moon*, 264 Ga. 93, 100 (3) (440 SE2d 657) (1994). Evidence "favorable to the defense" includes the prior inconsistent statements of witnesses for the prosecution. *Bailey v. State*, 229 Ga. App. 869, 874 (3) (494 SE2d 672) (1997). The record shows that, prior to trial, Ely made only a general request for "[a]ny and all information, which is exculpatory in determining the guilt or innocence of the Defendant." In response to such a general request, the prosecution must only disclose that "evidence which creates a reasonable doubt of guilt which did not otherwise exist." (Citations omitted.) *Williams v. State*, 250 Ga. 463, 465 (298 SE2d 492) (1983).

The record shows that both Randall and Danny, Jr. gave brief videotaped statements recounting the October 24 domestic dispute involving Ely, their mother, and themselves. Both said that Ely was initially armed with a knife and later a shotgun. Randall's statement describes how the argument started during dinner, and how Ely held a knife near Randall's throat, how Ely struck Evelyn on the head, how Ely made threats to shoot, and how Ely got a .12 gauge shotgun and fired it once while Randall hid behind a trailer. Danny, Jr.'s statement recounts how he and his guests heard the argument next door, how he saw Ely with a knife, how Ely threatened to whip Randall, and how Ely got a shotgun and fired it once. Although both statements coincide in large part with their trial testimony, they do contain inconsistencies that have impeachment value. In their statements, both Randall and Danny, Jr., only reported seeing Ely point the shotgun in the air, not directly at either of them or at Evelyn.[2] Ely argues that if Randall and Danny, Jr. had been impeached with these statements, the jury would have been authorized to disregard their trial testimony, which Ely contends was critical to the State's case.

While Ely would have been able to impeach Randall and Danny, Jr. with these prior inconsistent statements, he would not have been able to use them to impeach the testimony of witnesses Evelyn Ely and Dean Coots, both of whom testified they saw Ely point the gun at Randall. Dean Coots also saw Ely point the shotgun at Danny, Jr., and

---

[2] Ely also contends that Randall's pretrial statement concerning the knife attack was inconsistent with his trial testimony and therefore would have served to impeach him at trial. We do not agree. In both the statement and in his trial testimony, Randall explains that his father held the knife *near* his throat in a threatening manner. The two accounts are substantively the same.

he heard Ely threaten to shoot Danny, Jr. And while Evelyn never contended that Ely pointed the gun directly at her, she testified that Ely struck her with the stock of the shotgun after he fired it toward Randall, at a time when both Randall and Danny, Jr. were unable to see what was happening because they were in their respective hiding places. Thus, the aggravated assault counts against Evelyn, Randall, and Danny, Jr. by use of the shotgun were supported by the unimpeached eyewitness testimony of others. See OCGA § 16-5-21 (a) (2) (aggravated assault); OCGA § 24-4-8 ("The testimony of a single witness is generally sufficient to establish a fact."). Further, the State could have rehabilitated both Randall and Danny, Jr. to some extent on redirect by bringing out the fact the inconsistencies in their statements may have been motivated by their desire to return home at a time when their father was living in the house. Consequently, we cannot say that the State's failure to turn these statements over to Ely caused him the kind of prejudice that undermined confidence in the outcome of the trial or which created a reasonable doubt of guilt which did not otherwise exist. See *Radford v. State*, 251 Ga. 50, 52 (4) (302 SE2d 555) (1983) ("The district attorney did not violate *Brady* in failing to disclose that the victim was unable to identify [the defendant].").

(b) *Criminal Discovery*. Ely contends the prosecutor violated OCGA § 17-16-7 (pertaining to statements of witnesses) by failing to produce the statements of Randall and Danny, Jr. ten days prior to trial as required by the statute. Without citing any authority, Ely contends that the state's failure to produce the statements mandates a new trial. The reciprocal discovery statute itself, however, does not require reversal for noncompliance. See OCGA § 17-16-6.[3] Rather, it lists remedies for violations that come to the attention of the trial court "during the course of the proceedings." Id. Upon a showing of both "prejudice and bad faith" the court "may enter such other order as it deems just under the circumstances." Id. Here, the trial court denied Ely's motion for new trial, finding no discovery violation. "In reviewing a trial court's decision as to whether to impose sanctions or take other corrective action as a result of the State's failure to comply with its discovery obligations, the appropriate standard of review is

---

[3] OCGA § 17-16-6 provides, in relevant part:
If at any time during the course of the proceedings it is brought to the attention of the court that the state has failed to comply with the requirements of this article, the court may order the state to permit the discovery or inspection, interview of the witness, grant a continuance, or, upon a showing of prejudice and bad faith, prohibit the state from introducing the evidence not disclosed or presenting the witness not disclosed, or may enter such other order as it deems just under the circumstances.

whether the trial court abused its discretion." (Citation and punctuation omitted.) *Brown v. State*, 236 Ga. App. 478, 481 (3) (512 SE2d 369) (1999).

It appears from the record that the State's failure to make the videotaped statements available was inadvertent and not in bad faith. Further, as set forth above, Ely has not shown that he was prejudiced as a result of any violation or "that the outcome of the trial would have been different absent such." *Morris v. State*, 268 Ga. App. 325, 327 (1) (601 SE2d 804) (2004). Consequently, we cannot say that the trial court abused its discretion in denying Ely's motion for new trial based upon a violation of OCGA § 17-16-7.

2. Ely argues the trial court erred in basing its order, in part, on facts not in evidence. Specifically, Ely contends the court erred in concluding that the "[video]tape was in the [prosecutor's] file prior to trial and could have been reviewed by the Defendant." The trial court's conclusion does overstate the prosecutor's testimony. The prosecutor testified that he listened to the tape at some point, put it in a desk drawer, and then forgot about it. The prosecutor testified that he may have mentioned the tape to defense counsel, but he could not be sure. None of this matters, however, as our holding in Division 1 makes clear. Even if the tapes were inadvertently suppressed, Ely cannot show the requisite prejudice. Absent a showing of the requisite harm, reversal is not required.

*Judgment affirmed. Smith, P. J., and Adams, J., concur.*

DECIDED OCTOBER 4, 2005.

*Bret E. Rudeseal*, for appellant.
*Leigh E. Patterson, District Attorney, C. Stephen Cox, Assistant District Attorney*, for appellee.